Arbitration                                                                December 15, 2005
Washington, DC

Page 166

1    Q.  I'm asking what your policy is.
2        MR. CHATILOVICZ:  Objection, she just
3    told --
4        THE WITNESS:  I can't speculate on that.
5    Every situation --
6        MR. CHATILOVICZ:  -- you she can't
7    speculate on another set of facts.
8        ARBITRATOR ZUMAS:  Please, one at a time,
9    all right?
10       THE WITNESS:  I can't speculate on that.
11       MR. CHATILOVICZ:  My objection is you're
12   reasking a question as you're posing another set of
13   facts and saying what would she have done in those
14   instances.
15       Ms. Marquez has already pointed to one of
16   the rules violations that she believes were violated.
17   You don't have to violate five rules, although she's
18   also suggested that she thought what he did ran afoul
19   of this as well, but she's already testified that one
20   of the rules -- set of rules attached to the
21   settlement agreement were violated.
22       You know, you're -- let's continue.
23       BY MS. VIRK:
24   Q.  Ms. Marquez, I just want to understand
25   what the hotel's policy is.

Page 167

1    A.  Um-hum.
2    Q.  Is your understanding that it is an act
3    that violates the violence in the workplace policy
4    for an employee to accuse a manager of being racist;
5    is that correct, that that is a verbal threat?
6    A.  In specific the --
7    Q.  Please feel free to look at Roman's
8    statement, which is Hotel Exhibit Number 2.
9    A.  The work environment is no place for the
10   rumor mill slander --
11       MR. CHATILOVICZ:  She wants you to --
12       THE WITNESS:  -- is that where your
13   question is at?
14       MR. CHATILOVICZ:  She wants you to look
15   at --
16       ARBITRATOR ZUMAS:  Come on.
17       THE WITNESS:  Violence is defined --
18       ARBITRATOR ZUMAS:  This poor reporter
19   can't function.
20       THE WITNESS:  Violence is defined as a
21   physical or verbal threats, abuse, results of trauma
22   against a co-worker, physical, psychological damage
23   and which interferes with the employee's ability to
24   perform his or her job, yes.
25       What was said and what Mr. Merhai said to

Page 168

1    Vrnem would fall under the verbal abuse and
2    interfering with an employee's doing the
3    responsibilities of their job, and psychological
4    damage, absolutely.
5        Roman was clearly very shaken and upset
6    and so was Kay Vrnem, so yes, that would be.
7        BY MS. VIRK:
8    Q.  So it's your policy to discipline people
9    whenever they offend a manager; is that?
10   A.  No, that's not what I said.
11       ARBITRATOR ZUMAS:  Mrs. Virk, let me s
12   something.  What you're attempting to establish is
13   that there was no just cause to terminate this
14   grievant.  In the last clear chance situation the
15   only thing that the employer has to do is to
16   establish a prima facie case of a commitment of an
17   offense that was similar to the offenses for which he
18   was discharged and subsequently out in the Last
19   Chance Agreement.
20       The employer does not have an obligation
21   to establish just cause under these circumstances.
22       MS. VIRK:  I understand that.
23       ARBITRATOR ZUMAS:  So attacking the p
24   is attacking the just cause provisions and just cause
25   is not present in this grievance.

Page 169

1        MS. VIRK:  I understand what you say and I
2    completely agree that just cause is not the issue
3    here.  However, it is the Union's position that the
4    hotel has to show violation of some policy in order
5    to be able to terminate the grievant.  They can not
6    simply state this is conduct that they do not like
7    that appears to be similar and not cite any policy or
8    any other basis by which their employees could have
9    had due notice for what was required.
10       That's my only --
11       ARBITRATOR ZUMAS:  The policy violations
12   were set forth specifically and with specificity in
13   the Last Chance Agreement.  The Last Chance Agreement
14   was signed by the grievant, he was returned to work
15   at a time subsequent was allegedly committing
16   infractions that were violative of the Last Chance
17   Agreement.  Your attacking the policy again is of no
18   consequence.
19       MS. VIRK:  Again, I understand what you
20   say simply reading paragraph 3, which is all I have
21   of the settlement agreement states specific policies
22   it is true and is part of the Union's burden also to
23   show that there has been no violation, even on the
24   facts that they've alleges of any specific policies
25   that are listed in the Last Chance Agreement and --