Page 186

1  understanding that that writing in the upper
2  right-hand corner indicates something regarding
3  Mr. Merhai's statements during the 7/29/05 meeting,
4  which I understand Ms. Marquez was not present at.
5      MR. CHATILOVICZ: To my understand that
6  meeting was on 7/28.
7      MS. VIRK: Okay, sorry, fine. You're
8  welcome to object to their introduction, but I
9  believe that --
10     ARBITRATOR ZUMAS: They will be admitted.
11     MR. CHATILOVICZ: And it's your testimony
12 you got those from us?
13     MS. VIRK: It is my understanding that I
14 got them. Obviously Mr. Merhai was in that meeting,
15 in fact, I guess he's the only person left that was
16 at the meeting as Mr. Folly is not going to testify,
17 so perhaps he can shed some light on under what
18 circumstances entries were made. I don't know who
19 made them, that's why I'm asking your witness.
20     THE WITNESS: They are not my handwriting.
21     ARBITRATOR ZUMAS: Have copies made and
22 they will become part of the record.
23     MR. CHATILOVICZ: No further questions.
24     MS. VIRK: No further questions.
25     ARBITRATOR ZUMAS: Ms. Marquez.

Page 187

1      THE WITNESS: Yes.
2      ARBITRATOR ZUMAS: As I understand it, at
3  the time Hay-Adams did not have a human resources
4  person.
5      THE WITNESS: At the time of July '05 we
6  did, Keyonia Parsons.
7      ARBITRATOR ZUMAS: Oh, all right.
8      THE WITNESS: At the time of '03 we may
9  not have.
10     ARBITRATOR ZUMAS: There --
11     THE WITNESS: There was a long gap where
12 we did not have a human resources manager and my
13 point was Marina Kazlausky very often would take on
14 that role.
15     ARBITRATOR ZUMAS: Okay. Now here is an
16 employee of 24 years and I don't know what his prior
17 record is, other than the infractions that led up to
18 the Last Chance Agreement. But it's clear from
19 reading this and references to his statements about
20 Harry saying about Roman, this guy's making up
21 stories about me, Cynthia was at the desk, I can't
22 remember she's conspiring against me.
23     I have nothing to say -- this is Harry --
24 Roman is taking revenge because yesterday he was
25 rooming a guest and I told him when I am in the

Page 188

1  building that is my job. I brought that to Gerard's
2  attention and that's why he, Roman, is taking
3  revenge.
4      When asked about Cynthia, who overheard
5  portions of the conversation, Harry says, Cynthia's
6  management, she would be against me to conspire.
7      Now this is testimony I think by a trouble
8  employee; would you agree with that.
9      THE WITNESS: Um-hum.
10     ARBITRATOR ZUMAS: And someone who needs
11 psychiatric counseling, would you agree with that?
12     THE WITNESS: I'm not a psychiatrist, I
13 don't know.
14     ARBITRATOR ZUMAS: But you've been
15 involved in the discipline grievance procedures with
16 the hotels --
17     THE WITNESS: Yes.
18     ARBITRATOR ZUMAS: -- and you were
19 directly involved I am assuming in the decision to
20 termination the grievant in violation of the Last
21 Chance Agreement.
22     THE WITNESS: Correct.
23     ARBITRATOR ZUMAS: But did you consider at
24 all the alternative of saying we've got to do
25 something about this man, 24 years is a long time and

Page 189

1  he needs help and we should give him that help,
2  instead of putting him out on the street?
3      THE WITNESS: Well, you have to understand
4  that I mean we're -- we have not discussed everything
5  that lead up to the Last Chance Agreement, but a Last
6  Chance Agreement was a serious issue, okay.
7      There are other things that we -- that did
8  not lead to the termination that I might be aware of
9  with this particular employee and does he need -- you
10 know, I think you have to look at it from a
11 consistency and fairness and implementing the policy
12 of the hotel that we had a Last Chance Agreement,
13 this guy is going around and making false accusations
14 and so is it a psychological issue? No, I don't --
15 no, I don't believe it is, no, I don't believe it is.
16     ARBITRATOR ZUMAS: You don't think that --
17     THE WITNESS: It is an issue where it was
18 blatant, it was in a public area, it was a clear
19 violation of how tell polices that were covered in
20 the Last Chance Agreement. And so -- and so, no,
21 we -- we -- there are occasions where we have
22 certainly assisted employees and offered, you know
23 assistance through programs or through counseling and
24 things of that nature. In this case, no, I don't
25 think that was appropriate.