**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| HAY ADAMS HOTEL, LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-CV-00968 (EGS) |
| | ) | |
| HOTEL AND RESTAURANT | ) | |
| EMPLOYEES, LOCAL 25, UNITE HERE | ) | |
| INTERNATIONAL UNION, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

**DEFENDANT/COUNTERCLAIM PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant/Counterclaim Plaintiff Hotel And Restaurant Employees, Local 25, UNITE

HERE International Union, respectfully moves this Court for summary judgment on its

counterclaim, as well as on the claim asserted by Plaintiff/Counterclaim Defendant Hay Adams

Hotel, LLC, in its Complaint.  The reasons supporting this motion are fully set forth in the

accompanying Memorandum.

Respectfully submitted,

/s/ Devki K. Virk
Devki K. Virk (D.C. Bar No. 459418)
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W., Suite 1000
Washington, D.C.  20005
(202) 842-2600 (Telephone)
(202) 842-1888 (Facsimile)

*Counsel for Defendant/Counterclaim Plaintiff
Hotel & Restaurant Employees, Local 25,
UNITE HERE International Union*

Dated: November 22, 2006

**PROOF OF SERVICE**

I hereby certify that Defendant/Counterclaim Plaintiff's Cross-Motion for Summary Judgment, together with its Memorandum in Support of that Cross-Motion and in Opposition to the Hotel's Motion for Summary Judgment, the Declaration of Devki K. Virk, and all exhibits thereto, were filed on November 22, 2006 using the Court's CM/ECF system, under which all counsel are automatically notified as follows:

Peter Chatilovicz
Jessica R. Hughes
SEYFARTH SHAW LLP
815 Connecticut Avenue, N.W. – Suite 500
Washington, D.C.  20006-4004
(202) 463-2400 (Telephone)
(202) 828-5393 (Facsimile)
pchatilovicz@seyfarth.com
jhughes@seyfarth.com

/s/ Devki K. Virk_____
Devki K. Virk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HAY ADAMS HOTEL, LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-CV-00968 (EGS) |
| | ) | |
| HOTEL AND RESTAURANT | ) | |
| EMPLOYEES, LOCAL 25, UNITE HERE | ) | |
| INTERNATIONAL UNION, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF THE UNION'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO THE HOTEL'S MOTION FOR SUMMARY JUDGMENT[1]

### Introduction

On May 24, 2006, Plaintiff-Counterclaim Defendant Hay Adams, LLC ("Hay Adams" or "the Hotel") filed the instant Complaint against Defendant-Counterclaim Plaintiff Hotel and Restaurant Employees, Local 25, UNITE HERE International Union ("Local 25" or "the Union"), a labor union that represents approximately 10,000 workers employed in hospitality industries in the metropolitan Washington area, including those working at the Hotel.  The Hotel's Complaint, brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeks to vacate an arbitration award rendered by Arbitrator Nicholas H. Zumas on April 13, 2006 ("the Award") pursuant to the collective bargaining agreement ("CBA") between the Hotel and the Union.  In that Award, Arbitrator Zumas found that the Hotel had improperly

---

[1] For the convenience of the Court and the parties, we submit this single memorandum of law in support of the Union's motion for summary judgment and in response to the Hotel's motion for summary judgment.

discharged Girdharry Merhai, a bellman employed by the Hotel for twenty-four years, and ordered Mr. Merhai's reinstatement upon certification by a psychological professional that he was fit to resume duty.

The Hotel refused to comply with the Award and instead filed this lawsuit, contending that the Award fails to "draw its essence" from the parties' agreements, and that it is unenforceable because it violates public policy. Cmplt. ¶¶ 22-23. The Union answered the Complaint and counter-claimed for enforcement of the Award. Answer and Counterclaim ¶¶ 1-13 (Jul. 24, 2006).

The parties agree that this matter may be resolved on summary judgment. See Joint Motion to Move Date of Initial Scheduling Conference and to Set Briefing Schedule for Dispositive Motions (Aug. 18, 2006), at p. 1. Pursuant to the briefing schedule entered by the Court, the Hotel submitted its summary judgment motion on October 16, 2006. As we now show, the Hotel's claim is without merit and its motion should be denied. The Award issued by Arbitrator Zumas is proper in every respect, and should, accordingly, be enforced.

## FACTUAL BACKGROUND

### A.    The Parties' Collective Bargaining Relationship and Negotiated Grievance Procedures.

Local 25 has represented non-supervisory employees of the Hay Adams for many decades. Throughout this period, the parties have entered into a series of multi-year collective bargaining agreements which set out the wages, benefits, working conditions, and other terms of employment for Local 25-represented employees at the Hay Adams. Each of these contracts includes detailed grievance procedures. These procedures, which culminate in final and binding arbitration, represent the parties' negotiated mechanism for resolving all "grievance[s] or misunderstanding[s]" arising out of the agreement. Exhibit 1 (Excerpts of 2005-2007 CBA), at

Art. 17.1.[2]   The parties historically have appointed a panel of several professional, nationally-recognized arbitrators who serve during the term of the CBA.  Grievances proceeding to this final step are then heard and decided by the members of this panel in rotation. Id. at Art. 17.3.

**B.**    **Girdharry Merhai's Employment with the Hay Adams and the 2003 Grievance.**

Girdharry Merhai began working for the Hay-Adams on April 27, 1981, just a few months after he and his wife emigrated from British Guyana to the United States.  Although he initially joined the Hotel's staff as a houseman, Mr. Merhai applied for and received a promotion to the position of bellman in 1988, and continued in that capacity – greeting and providing front-line service and attention to the needs of the Hotel's guests – for seventeen years.  See Exhibit 2 (Excerpts from Transcript of Arbitration Hearing),  at Vol. 1, pp. 214-216.

In 2003, the Hotel fired Mr. Merhai, contending that he had violated the Hotel's prohibitions against making slanderous remarks and spreading rumors.  Specifically, the Hotel charged that Mr. Merhai had told other employees that Hans Bruland, the Hotel's general manager, stole money from the employees and was a thief, and called for him to be fired.  See Exhibit 3 (Award), at p. 5.

The Union filed a grievance challenging the Hotel's decision to terminate Mr. Merhai. Subsequently, the Hotel and the Union agreed to resolve the grievance rather than proceed to arbitration.  Under that settlement, the Hotel agreed to reinstate Mr. Merhai to his prior position with full seniority.  However, the parties agreed that the Hotel could terminate Mr. Merhai "[s]hould [he] engage in behavior in the future that is similar in nature to that which gave rise to

---

[2] The exhibits in support of the Union's motion for summary judgment are attached to the Declaration of Devki K. Virk.  All references in this memorandum to exhibits refer to exhibits to that declaration.

the instant grievance—including violating the Hotel's "The Work Environment is No Place for the Rumor Mill" policy, its Performance Improvement policy, and its Harassment policy." Exhibit 4 (2003 Settlement Agreement), at ¶ 3.  It is undisputed that, in negotiating and drafting the 2003 settlement agreement, the parties never contemplated the question whether its terms could – or should -- extend to conduct on the part of Mr. Merhai that was unintentional or resulted from a psychological condition.  Id. at p. 14; see also Exh. 2 (Transcript Excerpts), at Vol. 1, pp. pp. 188-190  (testimony of C. Marquez, Hotel Director of Operations).

**C.** **The Hotel's 2005 Termination of Mr. Merhai and the Ensuing Grievance and Arbitration.**

1.      On July 28, 2005, the Hotel fired Mr. Merhai on grounds that he had engaged in conduct "similar in nature" to that referenced in the 2003 settlement agreement.  Specifically, the Hotel alleged that Mr. Merhai had, in a loud voice in the employee cafeteria, told a co-worker that the Hotel's comptroller harassed him to return to duty while he recuperated from a work-related injury.  Exh. 3 (Award), at p. 5.  In addition, the Hotel charged that Mr. Merhai, while on duty in the lobby of the hotel, had accused three managers -- a supervisory trainee; the Hotel's general manager, Mr. Bruland; and the Hotel's director of operations, Collette Marquez, of being racists.  Id. at pp. 3-4.

The Union filed a timely grievance protesting Mr. Merhai's termination.  The parties were unable to resolve the grievance, and therefore the parties agreed to submit the matter to Arbitrator Nicholas H. Zumas, the panel arbitrator whose turn in the rotation had come, for decision.

2.      The arbitration hearing proceeded on December 15 and 16, 2005.  Both the Hotel and the Union presented witnesses and submitted exhibits.  During the course of his extensive testimony, Mr. Merhai stated that the supervisory trainee had made derogatory comments that,

although not expressly mentioning Mr. Merhai's race, made Mr. Merhai "feel inferior,"

"belittled," and "like a little piece of sand."  Exh. 2 (Transcript Excerpts), at Vol. 1, pp. 233-234.

Mr. Merhai acknowledged that he asked the trainee, "You think I am stupid because of the color

of my skin?"  Id. at Vol 1, p. 234;  Vol. 2, p. 24.   He also claimed that three of the management

witnesses had "conspired against [him]" and fabricated their stories together, and that one of the

witnesses had been "trying to set [him] up all the time."  Id. at Vol. 2, pp. 27 -30.

        Noting that Mr. Merhai's attitude and conduct during the hearing had been "bizarre,"

Arbitrator Zumas asked the parties whether they had considered whether there was a

psychological explanation for Mr. Merhai's outburst.  Id. at Vol. 2, p. 76.  Colleen Marquez, the

Hotel's director of operations, admitted that such a possibility had never been considered, either

while negotiating the 2003 agreement or at any time thereafter.  Id. at Vol. 1, pp. 188-190.

        After the close of the evidence, the parties submitted extensive post-hearing briefs.  See

Exhs. 5 (Union Post-Hearing Brief) and 6 (Hotel Post-Hearing Brief).

### D.    Arbitrator Zumas's Award and the Hotel's Refusal to Comply

        On April 13, 2006, Arbitrator Zumas issued his Opinion and Award sustaining the

grievance in part, and denying it in part.  At the outset, the Arbitrator was required to determine

the precise issues submitted to him for decision, as the parties were unable to formulate an

agreed-upon statement of those issues.   Exh. 3 (Award), at p. 3.  As to this threshold matter,

Arbitrator Zumas found that the dispute had presented him with two related issues:  "[w]hether

Grievant violated the conditions of his Last Chance Agreement; and if so, whether the penalty of

termination was appropriate?"  Id.

        As to the merits, the Arbitrator found that Mr. Merhai had engaged in conduct that

violated the conditions of the 2003 settlement agreement; however, he found the penalty of

discharge inappropriate.  Id. at p. 13.  In reaching the latter conclusion, the Arbitrator held that

Mr. Merhai was a "troubled employee" whose psychological problems may have contributed to

his conduct.  Id.  The Arbitrator based this finding, in part, on his observation of Mr. Merhai's

demeanor throughout the hearing, and in part on Mr. Merhai's testimony and prior statements

manifesting a belief that members of management were "out to get him."  Id.  Significantly, the

Arbitrator also noted that the parties had not contemplated the possibility that Mr. Merhai was

suffering from a psychological problem when the 2003 settlement agreement was negotiated, nor

had the Hotel considered extending any form of employee assistance to Mr. Merhai.  Id. at 14.

On the basis of these facts, the Arbitrator found that termination was improper

appropriate under the circumstances.  Id. at 13.  He ordered that Mr. Merhai be conditionally

reinstated, after undergoing, at the Union's expense, a psychological evaluation to determine

whether he could perform his duties as an employee without future incident.  Id. at 14-15.  He

also ordered that Mr. Merhai attend counseling for a nine-month period (also at the Union'

expense, and on Mr. Merhai's non-work time).  Id. at 15. Under the Award, if Mr. Merhai did

not successfully complete these steps, he would not be entitled to reinstatement.  Id.  The

Arbitrator retained jurisdiction to ensure these conditions were met.  Id.

The Hotel subsequently refused to comply with Arbitrator Zumas's Award and, on May

24, 2006, initiated this lawsuit.

## ARGUMENT

### A.    The Standard of Review:  Judicial Deference to Labor Arbitration Awards

1.    National labor policy contemplates and encourages employers and unions to

create a "system of industrial self-government" through the collective bargaining process, with

their negotiated contract a living document serving as a "generalized code" for determining their

parties' rights and obligations.  <u>United Steelworkers v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 580, 578 (1960) ("<u>Warrior & Gulf</u>").[3]   Under that policy, private arbitration—the parties' chosen method of resolving disputes—lies "at the very heart" of that system, <u>id.</u> at 581, providing a vital alternative to the strikes or work stoppages that routinely occurred when, in the absence of any contractual dispute resolution mechanism, the parties could resort to economic warfare whenever a problem arose under their labor agreement.  <u>Id.</u> at 578.

In contracts that require arbitration, "the processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." <u>Id.</u> at 581.   Indeed, "grievance and arbitration procedures," and the decisions rendered pursuant to those procedures, "are part and parcel of the ongoing process of collective bargaining." <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 38 (1987). As Judge Edwards of the D.C. Circuit has observed, "the adoption of an arbitration clause indicates that the parties have agreed to employ an arbitrator as their 'contract reader' and empowered him or her to render a binding interpretation of the collective bargaining agreement. . . .  [h]is interpretation of the law becomes part of the contract and thereby part of the private law governing the relationship between the parties." <u>American Postal Workers v. United States Postal Serv.</u>, 789 F.2d 1, 6 (D.C. Cir. 1986).  In particular, in interpreting the relationship between the parties, an arbitrator's "source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a

---

[3] This was one of three seminal opinions issued by the Court on the same day in 1960 that announced a strictly limited role for the judiciary in its review of labor arbitration decisions. <u>United Steelworkers v. American Mfg. Co.</u>, 363 U.S. 564 (1960); <u>United Steelworkers v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574 (1960); <u>United Steelworkers v. Enterprise Wheel & Car Corp.</u>, 363 U.S. 593 (1960).  These three cases are known and referred to collectively as the <u>Steelworkers Trilogy</u>.

part of the collective bargaining agreement although not expressed in it."  Warrior & Gulf, 363 U.S. at 581-82.  His "judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished."  Id. at 582.  An arbitrator appointed to resolve a dispute between parties to a labor agreement thus plays a role quite distinct from a court asked to interpret the terms of a contract.  As the Supreme Court has recognized, "[t]he labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of the courts."  Id. at 581.

2.    The critical function of arbitration in the collective bargaining process and in promoting industrial harmony finds statutory expression in Congress' determination that "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement."  29 U.S.C. § 173(d).  Understanding that this congressional policy "can be effectuated only if the means chosen by the parties for settlement of their differences is given full play," United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566 (1960), the courts have consistently affirmed the breadth of arbitral authority – and the extremely limited role of the judiciary – in labor relations for forty years.

The central principle is simply stated: "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960).  As the Court explained, "plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would never be final. . . . [T]he question of

interpretation of the collective bargaining agreement is a question for the arbitrator.  It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."  Id. at 599.

The deference owed to the parties' chosen dispute resolution procedures is so great that a reviewing court may not substitute its judgment of the merits for that of the arbitrator even if it is convinced that the arbitrator is patently wrong.  "[A]s long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000) (quoting Misco., 484 U.S. at 38).  "Every presumption is in favor of the validity of the award." Richmond, Fredericksburg & Potomac R.R. v. Transportation Communications Int'l Union, 973 F.2d 276, 278 (4th Cir. 1992)  ("Richmond R.R.") (internal quotation marks omitted).  The award need only "draw[] its essence from the collective bargaining agreement." Enterprise Wheel, 363 U.S. at 597.  Absent dishonesty or fraud, "only the narrowest of circumstances will justify setting the award aside."   Madison Hotel v. Hotel & Rest. Employees, Local 25, 144 F.3d 855, 858-59 (D.C. Cir. 1998) (en banc); Richmond R.R., 973 F.2d at 278 ("[J]udicial review of an arbitration award is among the narrowest known to law").  This deference is due not only to the arbitrator's interpretation of the contract's terms, Enterprise Wheel, 363 U.S. at 599, but to his view of the scope of the issues before him, Madison Hotel, 144 F.3d at 857; his formulation of the remedies appropriate for any breach, Enterprise Wheel, 363 U.S. at 597; and, as well, to his factual findings and any inferences he draws from them, Misco, 484 U.S. at 40.

3.    In applying this principle, courts have routinely rejected challenges to arbitration awards so long as the arbitrator has made a "good faith" effort to construe the agreement at issue. See Richmond R.R., 973 F.2d at 281; see also Madison Hotel, 144 F.3d at 859 (declining to invalidate arbitrator's decision ordering a hotel to reestablish an employee classification and hire new employees as his order was accompanied by opinions that "explicitly consider[ed] the relevant contract provisions"); Miller Brewing Co. v. Brewery Workers Local Union No. 9, 739 F.2d 1159, 1163 (7th Cir. 1984) (refusing to void arbitration award where the arbitrator "purported" to interpret the language of the CBA despite construing the meaning of "laid off" in an atypical fashion); see also Misco, 484 U.S. at 38 (upholding award reinstating employee fired for drug use, despite challenge that arbitrator ignored evidence showing that employee was present in a car on company property that was full of marijuana smoke, and also possessed marijuana in his own car); First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union, Local 338, 118 F.3d 892, 896-97 (2d Cir. 1997) (enforcing award reinstating employee who arrived at work under the influence of prescription drugs and alcohol, and who brandished what appeared to be a semi-automatic weapon to his co-workers, despite presence of policy stating that possession of weapons and intoxication are "just cause for immediate dismissal," and despite arbitrator's reference to extraneous concepts such as "mercy, pity, and compassion" in his award); Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l, 808 F.2d 76, 81 (D.C. Cir. 1987) (Edwards, J.) (enforcing award reinstating pilot who violated rule prohibiting consumption of alcohol within 24 hours of flying, despite the pilot having failed a breathalyzer test while flying). Of course, in the rare cases where an arbitrator disregards plainly applicable and unambiguous language in an agreement, courts have exercised their narrow review to ensure that the parties' agreement is given its intended effect. See Anheuser-Busch,

Inc. v. Local Union No. 744, 280 F.3d 1133 (7th Cir. 2002) (vacating award where arbitrator

intentionally disregarded unambiguous merger clause in a CBA, which provided that the express

terms of the CBA superseded all past practices of the parties, and instead decided that the

employer's past practice of paying salespeople a certain commission rate should prevail over the

rate stated in the CBA); United States Postal Serv. v. American Postal Workers Union, 204 F.3d

523, 531 (4th Cir. 2000) (finding arbitrator exceeded his authority in finding that a dispute

regarding the separation of a probationary employee was subject to the grievance procedure

where CBA clearly stated that "probationary employees shall not be permitted access to the

grievance procedure in relation [to separation].").[4]

    As we now show, Arbitrator Zumas's award is easily entitled to deference under these

principles, and summary judgment in favor of the Union therefore is warranted on all claims.[5]

---

[4] Moreover, an arbitrator is entitled to the same deference in interpreting any applicable settlement or side agreement which, like the one here, embodies the parties' settlement of a past dispute. See Continental Airlines, Inc. v. Int'l Bhd. of Teamsters, 391 F.3d 613, 618 (5th Cir. 2004) (holding that arbitrator's interpretation of an agreement settling grievance challenging employee's discharge is entitled to the same deference as his interpretation of a CBA); Brotherhood of Maint. of Way Employees v. Soo Line R.R. Co., 266 F.3d 907, 910 (8th Cir. 2001) (applying deferential standard of review to arbitrator's award regarding interpretation of parties' side agreement). Such agreements are part and parcel of the collective bargaining process, and an arbitrator resolving a dispute arising under a settlement agreement stands in no different position than one appointed to resolve a dispute arising under any other collectively-bargained contract. In both cases, the arbitrator possesses full authority to make findings of fact relevant to the issues presented, and to determine the meaning and intentions of the parties to the agreement. See Continental Airlines, Inc., 391 F.3d at 619 ("[W]e hold that the standard of review applicable here [to an award interpreting a settlement agreement] is the deferential standard of review articulated by the Supreme Court in Misco.").

[5] The Hotel did not move for summary judgment on the separate ground, asserted in its Complaint, that the Award is unenforceable because it violates public policy. See Complaint at ¶ 23. We therefore assume that the Hotel has abandoned this theory. Out of an abundance of caution, however, we note that the Union is entitled to judgment on this claim as the Hotel is unable to establish that the Award runs contrary to an "explicit, well defined, and dominant public policy." Eastern Associated Coal Corp. v. United Mine Workers of Am., 531 U.S. 57, 63

(continued . . . )

Duly selected by the parties to resolve the grievance challenging Mr. Merhai's discharge,

Arbitrator Zumas engaged in a good faith effort to interpret and apply the applicable agreements

to the case at hand.  His resulting award plainly "draws its essence" from those agreements and

conforms with the basic tenets of labor arbitration.   Enforcement therefore should be granted.

> **B.  <u>The Award Lies Within the Arbitrator's Authority as the Parties' "Contract Reader" and Draws its Essence from the Parties' Agreements</u>**
>
> > 1.  <u>The Arbitrator's Framing of the Issues Was "Rationally Derived" from the Parties' Submissions</u>

As noted above, the parties in this case did not stipulate to the issues that the Arbitrator

was to resolve.  In the absence of such an agreement, Arbitrator Zumas was confronted, in the

first instance, with the necessity of framing the questions the parties had asked him to decide.

This is not an uncommon occurrence in labor arbitration and in such circumstances courts

recognize that "[t]he scope of the arbitrator's authority is itself a question of contract

interpretation that the parties have delegated to the arbitrator."   <u>Madison Hotel</u>, 144 F.3d at 857.

Moreover, consonant with the principles described above, "an arbitrator's view of the issues

submitted to him for arbitration . . . receives the same judicial deference as an arbitrator's

interpretation of a collective bargaining agreement."  <u>Id.</u>; <u>see</u> <u>also</u> <u>National Gypsum Co. v. Oil,</u>

<u>Chem. & Atomic Workers Int'l Union</u>, 147 F.3d 399, 402-3 (5th Cir. 1998) (holding that where

"the parties were unable to stipulate to the issue to be decided by the arbitrator," the parties had

impliedly consented to allow the arbitrator to frame the issue, and it was "appropriate for the

---

(2000).  Articulation of such a policy, as "ascertained by reference to positive law and not from
general considerations of supposed public interests," <u>id.</u>, is fundamental to any claim that such a
policy would be violated by enforcement of an arbitration award.  <u>Id.</u>

arbitrator to decide just what the issue was that was submitted to it and argued by the parties.") (citations and internal quotation marks omitted).

Courts have uniformly held that an arbitrator's interpretation of the scope of the issue submitted "must be upheld so long as it is rationally derived from the parties' submission." Richmond R.R., 973 F.2d 276 at 280 (finding arbitrator was within his authority to consider federal case law in reaching his decision regarding the unilateral separation of employees, where the issue submitted by the parties was stately broadly and did not limit the arbitrator's consideration to the CBA); see also American Postal Workers Union, Milwaukee Local v. Runyon, 185 F.3d 832, 836 (7th Cir. 1999) (refusing to vacate award, and holding that arbitrator's amendment of parties' agreement regarding unpaid leave time in a way that had not been proposed by either party, was entitled to deference where parties did not expressly require the arbitrator to adopt a party's precise proposal, and the issue as submitted by the parties was broadly framed);.  This principle was applied in this Circuit's en banc opinion in Madison Hotel. The hotel in that case claimed that the arbitrator had exceeded his authority in ordering it to reestablish an abolished job classification and hire new employees to fill these positions, because the grievance had originally been brought only on behalf of the previously terminated employees. 144 F.3d at 857.  The district court agreed and vacated the award.  Id. at 858.  On appeal, the Circuit unanimously reversed.  Noting that the parties had not made a formal submission of issues to the arbitrator, the court found that the arbitrator had acted within his authority in framing the issues before him and writing an award that answered those issues.  Id.

Arbitrator Zumas's determination of the issues before him easily meets this test.  In its post-hearing brief to the Arbitrator, the Hotel proposed that the issue presented was "whether the Hotel had just cause to terminate the Grievant under his 'Last Chance' Settlement Agreement."

- 13 -

Exh. 6 (Hotel's Post-Hearing Brief), at p. 1.  The Union, in turn, stated the issue as "[w]hether the Hotel had cause pursuant to the 2003 settlement agreement to terminate Mr. Merhai's employment."  Exh. 5 (Union's Post-Hearing Brief), at p. 1.  The Arbitrator noted the parties' disagreement, and articulated the issues as follows: "whether Grievant violated the conditions of his Last Chance Agreement; and if so, whether the penalty of termination was appropriate?" Exh. 3 (Award), at p. 3

That statement plainly was "rationally derived" from the parties' submissions.  As in Madison Hotel, Arbitrator Zumas formulated these issues on the basis of the parties' own statements and the evidence that had been presented at the arbitration.   Moreover, in using the phrase, "just cause," the Hotel's own statement of the issue recognizes that the Arbitrator's authority was not merely limited to making factual findings regarding the alleged violations of the 2003 settlement agreement.  Cf. Northwest Airlines, Inc., 808 F.2d at 81 (Edwards, J.) (noting that, under a "just cause" standard, "arbitral determination not only of the existence of misconduct but of the fitness of the punishment is routinely grist for the arbitral mill").  Most importantly, far from ignoring the 2003 agreement between the parties, the Arbitrator expressly acknowledged that agreement as the governing document.  His view of the issues therefore is entitled to full deference under the principles of the Steelworkers Trilogy and its progeny.

       2.   The Arbitrator's Finding that the 2003 Settlement Did Not Require Mr. Merhai's Termination for Unintentional Misconduct Lay Well Within His Role as the Parties' "Contract Reader"

a.     Having properly framed the questions before him, Arbitrator Zumas proceeded to answer the first of them—whether Mr. Merhai had engaged in conduct that violated the terms of the 2003 settlement agreement – in the affirmative.   But this finding did not end Arbitrator Zumas's inquiry.  Moving to consideration of the second question – whether termination was

- 14 -

appropriate – required Arbitrator Zumas to determine the intentions of the parties in drafting the 2003 agreement and, in particular, to decide whether the possibility of a psychological cause to Mr. Merhai's "suddenly bizarre" behavior had been contemplated by the parties in negotiating that 2003 resolution.  Exh. 3 (Award), at p. 14.

That inquiry was prompted by the Arbitrator's observation of Mr. Merhai's behavior at the hearing, Mr. Merhai's testimony, and Mr. Merhai's admitted beliefs that management personnel were "conspiring together to bring about his downfall" and that other employees were lying in their testimony "out of fear" for their job security. [6]  Id. at pp. 13-14.   In reviewing the record, the Arbitrator noted that it was undisputed (and in fact was acknowledged by the Hotel's chief witness, Collette Marquez) that the parties had never considered whether Mr. Merhai's "suddenly bizarre" behavior was prompted by psychological issues, and had therefore not drafted the 2003 agreement with that possibility in mind.  Id. at 14; Exh. 2 (Transcript Excerpts), at Vol. 1, pp. 188-190.  Consequently, Arbitrator Zumas determined that the situation confronted by the parties in 2005 lay outside the range of conduct that the 2003 settlement agreement was intended to reach.   Exh. 3 (Award), at p. 14.  Essentially, he found that the parties had meant the 2003 agreement to cover only intentional misconduct – not behavior that, though similar in nature, was likely non-volitional.

b.      That finding lay well within Arbitrator Zumas's power as the parties' appointed "contract reader"; indeed, filling in a "gap" unforeseen by the bargaining parties is the essence of that role.   See Warrior & Gulf, 363 U.S. at 581 ("Arbitration is the means of solving the

---

[6] Of course, the only facts which may be considered upon judicial review of an arbitration opinion are the facts found by the arbitrator.  See Misco, Inc., 484 U.S. at 37-38; Richmond R.R., 973 F.2d at 281.

unforeseeable by molding a system of private law for all the problems which may arise and to

provide for their solution in a way which will generally accord with the variant needs and desires

of the parties."). He properly looked to the evidence of the parties' bargaining history to

determine the meaning and scope of the agreement; while in this case that history was

undisputed, such evidence, presented by both parties, routinely is considered by labor arbitrators

called upon to interpret a contract provision.  See, e.g., Jasper Cabinet Co. v. United

Steelworkers of Am., 77 F.3d 1025, 1030 (7th Cir. 1996) (finding that arbitrator permissibly

considered the past positions of the parties in bargaining in interpreting an ambiguous contract

provision); Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co., 956

F.2d 22, 25 (2d Cir. 1992) (holding an arbitrator may not be bound by the parol evidence rule).

       Using these conventional tools, Arbitrator Zumas concluded that the 2003 agreement was

not intended by the parties to require termination in circumstances where the behavior at issue

could be the product of mental illness or psychological problems that could potentially be

addressed through evaluation and treatment.  Accordingly, Arbitrator Zumas found that he was

not compelled to ratify the Hotel's termination of Mr. Merhai, and ordered his reinstatement

upon compliance with particular conditions tailored to address what Arbitrator Zumas viewed as

the underlying cause of his conduct: a possible psychological condition.  Cf. Eaton Cutler-

Hammer Corp., 110 LA 467, 471 (Franckiewicz 1998) ("[I]f the arbitrator concludes that the last

chance agreement does not apply to the type of misconduct alleged, the arbitrator applies the

traditional just cause standard, as if there had been no last chance agreement.").

       c.     Such a decision is utterly unremarkable in the labor arbitration field.  Arbitrators

are accustomed not only to determining the meaning of agreements, but to fashioning awards

that attempt to account for the uncontemplated, unintentional conduct of a "troubled employee."

Indeed, the concept of the "troubled employee" is an important concept in the "common law" of arbitrators -- that is, arbitrators' "generally accepted approaches toward commonly encountered problems." Theodore J. St. Antoine, ed., <u>The Common Law of the Workplace: the Views of Arbitrators</u>, at p. viii (1999).[7] <u>See</u> <u>also</u> <u>Warrior & Gulf</u>, 363 U.S. at 581-82 ("The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."). As noted in a leading treatise, "[w]here it is demonstrated that the basis of a discharge was due not to an intentional individual fault of the grievant but rather to a defect in mental or physical capacity, arbitrators have not hesitated to order reinstatement conditioned upon a proper showing of mental or physical fitness." M. Hill, Jr. & A. Sinicropi, <u>Remedies in Arbitration</u> at 43 (1981); <u>see</u> <u>also</u> Daniel G. Collins, "Just Cause and the Troubled Employee," in <u>Arbitration 1988: Emerging Issues for the 1990s, Proceedings of the 41st Annual Meeting, National Academy of Arbitrators</u> at 26 (Gladys W. Gruenberg, ed., 1989) ("Today a substantial body of arbitral authority exists for the view that the just-cause standard, in the context of alcoholism and mental illness, requires as a condition of discharge that afflicted employees be accorded, albeit at their own expense, a reasonable opportunity for professional rehabilitation.")

---

[7] Professor St. Antoine is an active arbitrator and leading scholar in the field of labor arbitration. He is a past president of the National Academy of Arbitrators (a select association of experienced labor neutrals, of which Arbitrator Zumas is also a member); and also formerly served as dean of the University of Michigan Law School. <u>See</u> <u>Cole v. Burns Int'l Sec. Servs.</u>, 105 F.3d 1465, 1474-75 (D.C. Cir. 1997) (Edwards, J.) (describing Prof. St. Antoine as a "preeminent labor law scholar" whose article on the <u>Steelworkers Trilogy</u> "has been widely recognized as an almost gospel statement on the meaning" of those cases). His project in <u>The Common Law of the Workplace</u> is to collect and describe the general principles of labor arbitration that have developed through experience over the past forty years. St. Antoine, <u>The Common Law of the Workplace</u>, at p. viii.

Animating this doctrine is a recognition by arbitrators of the inequity of assigning fault to someone who, in all likelihood, could not control himself.  One author, quoting an arbitral award regarding a paranoid employee who attacked a fellow employee, describes the "basic premise" of such awards thusly: "[a]s a matter of equity, fundamental justice and common sense, it would be unfair and unjust to hold a person responsible for an act of misconduct committed at a time when that person was not only unable to control his own actions but was also mentally incapable of comprehending the culpable nature thereof."  Dorothy J. Cramer, "Arbitration and Mental Illness: the Issues, the Rationale, and the Remedies, 35 Arb. J. 3, p. 12 (1980) (quoting B.F. Goodrich Co., 77-2 ARB para. 8561 (Klein 1977)).  Thus, once an arbitrator finds an employee to be "troubled," whether due to possible mental illness or addiction, that arbitrator may apply a "modified corrective discipline approach" that provides an opportunity for rehabilitation in addition to corrective discipline.  See St. Antoine, The Common Law of the Workplace, § 6.27; M. Hill, Jr. and A. Sinicropi, "Remedies, Troubled Employees, and the Arbitrator's Role," in Arbitration 1989: The Arbitrator's Discretion During and After the Hearing, Proceedings of the Forty-Second Annual Meeting, National Academy of Arbitrators at 162 (Gladys W. Greunberg, ed. 1990).

In approaching the problem submitted to him in such a manner, Arbitrator Zumas closely paralleled the arbitrator's decision in LTV Steel Mining Co., 110 LA 283 (Das 1997).  In that arbitration, the grievant, who had an abysmal attendance record, was placed on antidepressant medication and ordered to undergo therapy as a condition in two successive last chance agreements that had been negotiated in lieu of termination.  Id. at 283-84.  Sometime later, his diagnosis was changed to bipolar affective disorder, but his medication was not changed.  Id. at 286.  The grievant was discharged for violating the terms of his last chance agreement, and, as

here, the Company argued that it was "at the end of its rope" and the grievant should not be entitled to a "third 'last chance.'" Id. at 287. The Arbitrator (Shyam Das, another member of the National Academy of Arbitrators) agreed with the Union that it was at least possible that the prescription of the wrong medication had contributed to the grievant breach of the last chance agreement, and that he consequently should not be held responsible for the breach. Id. at 288; see also Cross Oil Refining Co., 111 LA 1013, 1024 (Bumpass 1999) (reinstating employee on last chance agreement for multiple confrontations with supervisors, co-workers, and customers, where employee was a diabetic whose condition may have caused short temper, but requiring employee to undergo mental and emotional fitness test to ensure that he would not be a disruption to the workplace, and to adhere to strict medical regimen and rules of conduct upon reinstatement). Similarly, in fashioning the Award at issue in this case, Arbitrator Zumas took care to interpret and apply the applicable agreement to the facts of the grievance before him, and to fashion a remedy consonant with that interpretation.

       d.    The circumstances confronted by the parties and the Arbitrator here set this case apart from International Union of Operating Engineers v. Cooper Natural Res., Inc., 163 F.3d 916 (5th Cir. 1999) and Coca-Cola Bottling Co. v. Teamsters Local Union No. 688, 959 F.2d 1438 (8th Cir. 1992), the cases principally relied on by the Hotel in support of its summary judgment motion. See Hotel's Opening Brief, at pp. 4-6. Neither of these cases concerned a troubled employee, and Cooper Natural did not even involve a violation of a settlement agreement. In Cooper Natural, the employer and union had negotiated a last chance agreement that conditionally reinstated an employee who had failed a drug test. 163 F.3d at 917-918. Immediately after executing the agreement, however, the union filed a grievance requesting that it be set aside on the grounds that the employee lacked notice of the drug policy. Id. at 918.

- 19 -

The arbitrator agreed with the union and set aside the last chance agreement.  Id.  The Fifth

Circuit affirmed the vacatur of the award, finding that the arbitrator had "disregard[ed]" and

"ignore[d]" the plain language of that agreement, which had been negotiated by the parties to

remedy the exact situation at issue at the arbitration.  Id. at 919-20.

       Here, in contrast, the Award responds to a situation that was indisputably not

contemplated by the parties in negotiating the applicable agreement.  Morever, unlike the

arbitrator in Cooper Natural, Arbitrator Zumas specifically considered the reach of the 2003

settlement agreement in light of the intentions of the parties in drafting it.  Nor is this a case such

as Ohio Edison Co. v. Ohio Edison Joint Council, 947 F.2d 786, 787 (6th Cir. 1991), in which

the arbitrator simply found the terms of the settlement agreement to be "unreasonably harsh, " or

Tootsie Roll Indus., Inc. v. Local Union No. 1, Bakery, Confectionary & Tobacco Workers' Int'l

Union, 832 F.2d 81, 84 (7th Cir. 1987), in which the correct application of the terms of a last

chance agreement was clear and unambiguous in the situation at hand.  Unlike the neutrals in

these cases cited by the Hotel, it can hardly can be said that Arbitrator Zumas "disregarded" the

2003 settlement agreement, Cooper Natural, 163 F.3d at 920; Ohio Edison Co., 947 F.2d at 787;

rather, he interpreted the scope of the agreement and found that it did not apply.   That act of

interpretation was grounded in the record evidence, and plainly is entitled to deference under the

principles of the Steelworkers Trilogy, even if the Court "is convinced he committed serious

error."  Eastern Associated Coal, 531 U.S. at 62.

       The Hotel may disagree with Arbitrator Zumas's conclusions.  The law is clear, however,

that such disagreement provides a court no basis for vacating the award.  See Misco., 484 U.S. at

38 ("[A] court should not reject an award on the ground that the arbitrator misread the

contract.").  Miller Brewing, 739 F.2d at 1163 ("[The arbitrator's] interpretation may very well

have been incorrect, but that is none of our business.").  As Arbitrator Zumas was at least "arguably" construing the 2003 settlement agreement, his award is entitled to deference and deserves enforcement.

*   *   *

This case is quite straightforward:  a properly filed grievance was submitted for decision to Arbitrator Zumas.  Based on the record compiled before him, and using the conventional tools and principles of labor arbitration, Arbitrator Zumas framed the issues, found facts, interpreted the parties' agreements, and fashioned his Award accordingly.  That Award in every aspect "draws its essence" from the parties' agreements.  The canons of limited review compel only one result: summary judgment should be granted in favor of the Union on the Hotel's claim and the Union's counterclaim, and the Award should be enforced.

## CONCLUSION

For all of the foregoing reasons, the Union respectfully requests that the April 13, 2006 award issued by Arbitrator Zumas be enforced, and that the Hotel be ordered to reinstate Mr. Merhai to his position under the conditions set forth in Arbitrator Zumas's award.

Respectfully submitted,

/s/ Devki K. Virk
Devki K. Virk (D.C. Bar No. 459418)
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W., Suite 1000
Washington, D.C.  20005
(202) 842-2600 (Telephone)
(202) 842-1888 (Facsimile)

*Counsel for Defendant/Counter-Plaintiff Hotel & Restaurant Employees, Local 25, UNITE HERE International Union*

Dated:  November 22, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HAY ADAMS HOTEL, LLC, )<br><br>      Plaintiff/Counterclaim Defendant, )<br><br>      v. )<br><br>HOTEL AND RESTAURANT )<br>EMPLOYEES, LOCAL 25, UNITE HERE )<br>INTERNATIONAL UNION, )<br><br>      Defendant/Counterlaim Plaintiff. ) | Case No. 1:06-CV-00968 (EGS) |

**UNION'S RESPONSE TO HOTEL'S  STATEMENT**
**OF UNDISPUTED MATERIAL FACTS, AND**
**UNION'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, Defendant/Counterclaim Plaintiff Hotel & Restaurant

Employees, Local 25, UNITE HERE International Union ("Local 25" or "the Union"), responds

to the Hotel's Statement of Material Facts As To Which There Is No Genuine Dispute (d/e 10),

and submits additional undisputed material facts in support of its cross-motion for summary

judgment.

    **A.**    **Union's Response to Hotel's Statement of Material Facts as to Which There**
            **is no Genuine Dispute**

Many of the paragraphs in the Hotel's statement contain argument, characterize

documents (such as the Arbitrator's Award) that should speak for themselves, or assert as true

matters that were the subject of vigorous dispute at the underlying arbitration hearing.  The

Union disagrees with many of the Hotel's characterizations, arguments, and assertions, and has

noted such disputes below.   However, we stress that none of these "disputed facts" is at all material to resolution of the pure legal issues raised by the parties' summary judgment filings.

  1.   Undisputed.

  2.   Undisputed.

  3.   Undisputed.

  4.   Undisputed.

  5.   The Union agrees that this paragraph accurately describes the allegations that led to Mr. Merhai's termination in 2003, and further agrees that those allegations are recited in the Award.  We do not, however, agree that those allegations were true.

  6.   The Union agrees that the Hotel terminated Mr. Merhai in 2003 based on the allegations described in Paragraph 5, and that the Union negotiated Mr. Merhai's reinstatement. The Union further agrees that the quoted language appears in the 2003 settlement agreement. The Union does not agree that Mr. Merhai actually engaged in the misconduct charged in 2003.

  7.   The Union agrees that the Arbitrator found that Mr. Merhai engaged in the behavior described in this paragraph,[1] and that those findings are recited in the Award.  The Union does not agree that Mr. Merhai actually engaged in the misconduct charged.

  8.   The Union agrees that the Arbitrator found that Mr. Merhai engaged in the behavior described in this paragraph,[2] and that those findings are recited in the Award.  The Union does not agree that Mr. Merhai actually engaged in the misconduct charged.

  9.   Undisputed.

---

[1] In both this paragraph and in Paragraph 8, the Hotel's references to 2004 dates are clearly in error; the events leading to Mr. Merhai's second termination occurred in 2005.

[2] In both this paragraph and in Paragraph 8, the Hotel's references to 2004 dates are clearly in error; the events leading to Mr. Merhai's second termination occurred in 2005.

10.    The Union agrees that it grieved Mr. Merhai's termination, and further agrees that it contended, among other arguments, that the Hotel failed to meet its burden that the conduct had occurred as alleged.

11.    The Union agrees that the Arbitrator concluded that Mr. Merhai had violated the conditions of the settlement agreement, and so stated in his Award.  The Union further agrees that the Hotel has accurately quoted from the transcript of the arbitration hearing.

12.    Undisputed.

13.    The Union agrees that the Arbitrator concluded in his Award that Mr. Merhai was a "troubled employee," and that the Hotel has accurately quoted language from the Award.  The Union further agrees that Ms. Marquez, the Hotel's Operations Manager, testified that she did not believe that Mr. Merhai's conduct resulted from any psychological issue.

14.    The Union agrees that the Arbitrator reinstated Mr. Merhai subject to requirements that he undergo counseling and evaluation, as provided in the Award.

**B.    Union's Statement of Additional Undisputed Material Facts in Support of its Cross- Motion for Summary Judgment**

15.    The Union is and at all times relevant to this suit has been a "labor organization" within the meaning of 29 U.S.C. § 152(5) and 185(a).  Local 25 maintains its principal office in the District of Columbia, and it has at all times relevant herein been engaged in representing employees in the hotel, restaurant, and related industries, many of whom are employed within the District of Columbia.  Counterclaim of Defendant Hotel & Restaurant Employees, Local 25, UNITE HERE International Union (hereinafter "Ccl.") at ¶ 1; Answer to Counterclaim (hereinafter "Ans. Ccl.") at ¶ 1.

16.    The Hotel is and has at all relevant times been a corporation owning and/or operating the Hay Adams Hotel in the District of Columbia.  The Hotel is and at all relevant

times has been an "employer" within the meaning of 29 U.S.C. §§ 152(2) and 185(c).  Ccl. at ¶ 2; Ans. Ccl. at ¶ 2.

17.    The Union timely filed a grievance protesting Mr. Merhai's termination, and, when the parties were unable to resolve the grievance at the lower steps of the procedure, the Union invoked arbitration, and the parties agreed to submit the grievance for hearing and binding decision before Arbitrator Nicholas H. Zumas.  Ccl. at ¶¶ 6-7; Ans. Ccl. at ¶¶ 6-7.

18.    A hearing regarding the grievance was held before Arbitrator Zumas on December 15 and 16, 2005.  Both parties were represented by counsel.  At this hearing, Local 25 and the Hotel presented testimony and exhibits in support of their respective positions, and examined and cross-examined witnesses.  Arbitrator Zumas received post-hearing  briefs from the parties on or about March 10, 2005.  Award at p. 2.

18.    On or about April 13, 2006, Arbitrator Zumas issued an opinion and award resolving the grievance.  Award at p. 15.

19.    To date, the Hotel has refused to comply with Arbitrator Zumas's award and has not reinstated Mr. Merhai.  Ccl. at ¶ 11; Ans. Ccl. at ¶ 11.

Respectfully submitted,


/s/ Devki K. Virk
Devki K. Virk (D.C. Bar No. 459418)
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W., Suite 1000
Washington, D.C.  20005
(202) 842-2600 (Telephone)
(202) 842-1888 (Facsimile)

*Counsel for Defendant/Counterclaim Plaintiff Hotel & Restaurant Employees, Local 25, UNITE HERE International Union*

Dated: November 22, 2006

- 4 -