**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HAY ADAMS HOTEL, LLC, )<br>　　　　　　　　　　　　　　　　　　　　　　　)<br>　　Plaintiff/Counterclaim Defendant, 　　　)<br>　　　　　　　　　　　　　　　　　　　　　　　)<br>　　v.　　　　　　　　　　　　　　　　　　　　)<br>HOTEL AND RESTAURANT EMPLOYEES, )<br>LOCAL 25, UNITE HERE INT'L UNION, 　)<br>　　　　　　　　　　　　　　　　　　　　　　　)<br>　　Defendant/Counterclaim Plaintiff.　　　)<br>　　　　　　　　　　　　　　　　　　　　　　　) | Case No.: 06-CV-00968 (EGS) |

**PLAINTIFF/COUNTERCLAIM DEFENDANT HAY ADAMS HOTEL, LLC'S
OPPOSITION TO DEFENDANT/COUNTERCLAIM PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT
<u>AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff/Counterclaim Defendant Hay Adams Hotel, LLC (the "Hotel") respectfully submits its opposition to Defendant/Counterclaim Plaintiff Hotel and Restaurant Employees, Local 25, UNITE HERE International Union's (the "Union") cross-motion for summary judgment ("Cross-Motion") and its reply in support of the Hotel's motion for summary judgment.

**INTRODUCTION**

In July 2005, the Hotel terminated Girdharry Merhai's ("Merhai") employment because he, unprovoked, unleashed a racist diatribe against his supervisors in the public area of a luxury hotel. This violated not only the Hotel's long-established policies but also the clear terms of the last chance agreement ("LCA") that Merhai, the Hotel, and the Union had all entered into 2003. Under the LCA – itself the result of another virulent outburst of Merhai concerning the Hotel's General Manager – Merhai had been reinstated to his position on the condition that the Union was waiving its right to grieve the Hotel's future discipline of Merhai if he engaged in like

conduct. There is no dispute among the Hotel, the Union, or the arbitrator that the arbitrator found that the LCA applied in this instance. Accordingly, the arbitration award's ("Award") rejection of the terms of the LCA is not based on the agreement between the parties and is unenforceable as a matter of law.

## ARGUMENT

I. THE AWARD IS NOT ENTITLED TO ANY DEFERENCE BECAUSE IT EXCEEDS THE SCOPE OF PARTIES' AGREEMENT.

While the Union spends much of its Cross-Motion extolling the virtues of deference to arbitration awards (Cross-Motion at pp 6-11) and of arbitral freedom interpret the parties' agreement (Cross-Motion at pp 14-21), those generalities do not control Arbitrator Zumas' specific overreaching of his authority in the current dispute. Where the arbitrator has exceeded the limits of the authority delegated to him by the parties' agreement, the resulting award is not enforceable. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

    A.    Because The Terms Of The LCA Are Not Ambiguous, They Are Not Subject To Interpretation By The Arbitrator.

Contrary to the Union's assertions throughout its Cross-Motion that Arbitrator Zumas was doing nothing more than interpreting the parties' agreement, once the Award found – as it did – that the LCA applied and was violated, there was nothing for the arbitrator to interpret. The LCA, like a collective bargaining agreement, is a contract, and like all contracts, interpretation comes into play only if there is ambiguity. *See Manhattan Coffee Company v. Int'l B'hood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 688*, 743 F.2d 621, 623 (8th Cir. 1984) ("[arbitrator] can construe ambiguous contract language if there is any"). Arbitrators have long recognized their limits in interpreting unambiguous contract

provisions. *See Phelps Dodge Copper Prods. Corp.*, 16 LA 229, 233 (Justin 1951).[1] As stated by Arbitrator Justin over fifty years ago:

> Plain and unambiguous words are undisputed facts. The conduct of Parties may be used to fix a meaning to words and phrases of uncertain meaning. Prior acts cannot be used to change the explicit terms of a contract. An arbitrator's function is not to rewrite the Parties' contract. His function is limited to finding out what the Parties intended under a particular clause. The intent of the Parties is to be found in the words which they, themselves, employed to express their intent. When the language used is clear and explicit, the arbitrator is constrained to give effect to the thought expressed by words used.

16 LA at 233. Here there is no ambiguity. The LCA provided that "[s]hould the *Grievant engage in behavior* in the future that is similar in nature to that which gave rise to the instant grievance…and as a result is terminated from employment, the Union agrees that it shall waive its right to grieve such future incident." (emphasis added) (Hotel's SOMF ¶ 6). It is undisputed that the arbitrator found that Merhai engaged in the prohibited conduct. Thus, there was nothing for Arbitrator Zumas to interpret and he was bound to abide by the Hotel's chosen discipline.

    B.    <u>The Arbitrator Exceeded His Authority By Requiring The Hotel To Prove Intent.</u>

The LCA speaks only of engaging in misconduct and does not refer to whether such misconduct had to be intentional. Because the LCA does not state that the reasons for Merhai's misconduct would be relevant, they are not. It is the same as if the LCA had stated that Merhai was subject to discipline if he failed to call the Hotel if he were going to miss work; it would not matter why Merhai had not called, only that he did not call. Had the parties thought intent was material, the term would have been included in the LCA. In the absence of any language in the LCA as to Merhai's intent, the only interpretation that comports with the principles of contract interpretation is that intent was irrelevant.

---

[1] Copies of all cited arbitration decisions are attached hereto as Exhibit A.

Next, if the Union thought there had to be intentional misconduct (in doubt, given that its defense of Merhai at the arbitration was that the misconduct never occurred, not that it was unintentional) and the Hotel did not (which is clear from the transcript), there was no meeting of the minds and thus no enforceable agreement. Arbitrator Zumas could have made this determination and then disregarded the LCA completely. Instead, however, the Award found the LCA was a valid agreement. Because there was a valid agreement, a meeting of the minds occurred as to its terms, including excluding intent and including the conduct only, and the arbitrator was constrained from changing the parties' agreed upon terms.

Because Merhai's intent was not at issue, the Union's apologist argument that it was not fair for the arbitrator to hold Merhai to accepted standards of public deportment and basic decency (Cross-Motion at 18) is not relevant. The LCA abrogates anything but whether Merhai engaged in the misconduct. It does not matter if Merhai misbehaved because he was "troubled" (Cross-Motion at 18). The LCA required only that the Hotel show Merhai committed the misconduct, which it did. The arbitrator exceeded his authority by requiring that the Hotel surmount another hurdle by proving that Merhai's conduct was intentional. Moreover, it would be impossible for the Hotel to show that Merhai intended to commit the misconduct. That the LCA would make it *more* difficult for the Hotel to discipline Merhai rather than less is illogical. Accordingly, the only correct reading of the LCA is that intent is not relevant. By importing an extraneous term not in the parties' agreement, Arbitrator Zumas dispensed his own brand of industrial justice and the resulting Award is unlawful.

Indeed, the very purpose in the Hotel agreeing to the LCA was to eliminate the subjectivity of intent or any other mitigating factors. As Arbitrator Fullmer stated in *H. J. Heinz Co.*:

4

> When a last chance agreement is entered into, it has the potential for benefiting all three parties. Each is spared the uncertainty of taking that termination to arbitration with the concomitant cost, burden and uncertainty. The employee gets to retain his/her job and retain his/her income. The Union is spared the possible loss of a member and dues income. The Company gets to retain an employee who presumably was satisfactory up until the events leading to the discharge. It also has the hopes that the employee will benefit and improve from what is the ultimate in progressive discipline, *i.e.* the sword hanging over the employee during the period that the last chance agreement governs. *But, these benefits will only accrue if arbitrators enforce the last chance agreements as written. If arbitrators do not do so, employers will be reluctant to enter into them and will simply take their chances with the first discharge in arbitration.*

122 LA 845, 848 (2006) (emphasis added). As the Union notes in its Cross-Motion, generally arbitrators have a great deal of leeway in their construction of the scope of the dispute, their interpretation of the contract, and the fashioning of a remedy. While this is true generally, this principle does not apply here. The express purpose of the LCA is to withdraw that authority from the arbitrator and to limit him or her to the narrow factual question of whether the alleged conduct occurred. Thus, unlike normal labor arbitrations, the "morale of the shop" (Cross-Motion at 8) or the "parties' bargaining history" (Cross-Motion at 16) are not relevant at all to Arbitrator Zumas' decision. Quite deliberately, the LCA limited Arbitrator Zumas' inquiry: did Merhai engage in conduct similar to that which led to the LCA in 2003? If yes, then he was obligated to uphold the Hotel's remedy. If not, he was to sustain the grievance.[2] The unambiguous terms of the LCA provided Arbitrator Zumas with no other option.

    C.    <u>The Arbitrator Exceeded His Authority By Ignoring The Terms Of The LCA.</u>

Because the arbitrator derives his or her authority from the parties' agreement, an award that exceeds the limit of that agreement is not valid. *See Lehigh Cement Co.*, 122 LA 643 (Gaba

---

[2]The Union acknowledged the distinction in a situation where the arbitrator concludes that the LCA does not apply (Cross-Motion at 16), but ignores the logical conclusion. If the arbitrator is to use the "traditional just cause standard" when the LCA does not apply, the logical corollary is that a different standard, *i.e.*, the less stringent standard bargained for the in the LCA, applies when the arbitrator concludes the conduct at issue did violate the LCA.

5

2006).  In *Lehigh Cement Co.*, the employee used a profanity that would normally result in a two-day suspension.  However, the employee was subject to a LCA that permitted the employer to terminate employment, which it did.  The arbitrator ruled that he had to enforce the LCA as written, despite his personal distaste, because "[f]or me to set aside the clear desire of the parties as compiled in D__'s Last Chance Agreement would require me to substitute my judgment for that of the parties and render their agreement inconsequential." *Id.* at 649.  Correctly, the arbitrator in *Lehigh Cement Co.* followed the unambiguous requirements of the LCA and upheld the discharge.  Unlike the arbitrator in *Lehigh Cement Co.*, Arbitrator Zumas did substitute his judgment for the parties' agreement.  Such a decision is beyond the arbitrator's authority and is thus an invalid exercise of that authority.

The cases and secondary sources cited by the Union for the general proposition that arbitrators have a great deal of discretion are not applicable, as here, when there is a controlling LCA with clear and explicit terms.  There, by the express agreement of the parties, the arbitrator has been limited to terms of the LCA.  Even the Union must concede that an arbitrator must act within the scope of his authority (Cross-Motion at 9) and it cannot be allowed to confuse the issue and expand the scope of the arbitrator's authority beyond the LCA.

    D.    <u>Because Arbitrator Zumas Is Not A Psychiatrist Or Psychologist, His Arm-Chair Diagnosis Of Merhais Is Not Entitled To Any Deference.</u>

Arbitrator Zumas is not a doctor nor a psychologist and yet he took it upon himself to diagnose Merhai with some type of mental illness.  *See* Cross-Motion at 15.  Certainly arbitral deference should not extend to an area reserved only for a well-trained professional, particularly when the psychology of Merhai was introduced as an issue by the arbitrator himself, not a party.  Further, the arbitrator made his diagnosis not on the basis of any scientific evidence in the record

6

but because he thought it was the only explanation for Merhai's behavior.[3] The Union cites no case where an arbitrator was permitted to play doctor. Rather, in the cases it cites, the employees had already been diagnosed by a physician, psychiatrist, or psychologist, rendering those cases dissimilar and easily distinguishable from this case. For example in *LTV Steel Mining Co.*, 110 LA 283 (Das 1997), the employee was on antidepressant medication, meaning a doctor – not the arbitrator – had diagnosed the employee's mental ailment and prescribed a drug. And in *Cross Oil Refining Co.*, 111 LA 1013 (Bumpass 1999) the employee had been diagnosed by a doctor – not the arbitrator at the hearing – as a diabetic. Arbitral deference is the product of the parties' agreement and the arbitrator's expertise in interpreting the contract. When he or she exceeds the bounds of that delegated power, whether it is to play doctor or to rewrite the terms of the agreement, the law need not – and should not – permit such authoritarian excursions.

II.     GIVING EFFECT TO THE AWARD IS CONTRARY TO PUBLIC POLICY.

The Cross-Motion must be denied because giving effect to the Award violates public policy. To begin, the bedrock principles of contract law and the private ordering of relationships between parties is upset when arbitrators ignore the terms of the parties' agreement. *See H. J. Heinz Co.*, 122 LA at 848. Allowing the Award to stand undermines the purpose of the LCA and is disruptive rather than conducive to industrial harmony. The arbitrator's authority is itself the product of the parties' agreement and his or her blatant disregard of the contract's limiting precepts violates public policy.

Most importantly, however, permitting the Award to stand violates the public policy of a safe workplace and exposes the Hotel to an unfair risk of liability. The Union rejects any

---

[3] The arbitrator's finding is analogous to a juror concluding that a murderer is not guilty by reason of insanity on the ground that the murderer must necessarily be crazy because no sane person would kill another human being.

7

concept that Merhai be responsible for his own actions and speaks instead of the "inequity of assigning fault to someone who, in all likelihood, could not control himself." Cross-Motion at 18.  If Merhai truly could not control himself, he had absolutely no business working in a place of public accommodation.  If Merhai could not control himself, as his random and violent outbursts allegedly showed, he posed a risk to his co-workers and guests of the Hotel.  It is unfair for the Hotel to have to assume risk of Merhai's behavior when he is the one who cannot control himself.  If Merhai were to threaten or harm another employee or a guest, the Hotel would face liability for its retention of Merhai, given its knowledge of his tendencies.  Thus, the Award puts the Hotel in an untenable position:  comply with the Award and face subsequent litigation and liability because Merhai "could not control himself" (Cross-Motion at 18) or refuse compliance and risk the Union's action for enforcement.  Public policy should not contemplate putting the Hotel in such a position.  Rather, public policy favors removing Merhai from his position because it was his own actions – the consequences of which had been fully explained to him in the LCA – that placed the Hotel in a compromised position.  Accordingly, the Court should deny the Union's cross-motion for summary judgment and grant the Hotel's motion for summary judgment.

## CONCLUSION

      For all the foregoing reasons and for the reasons stated in the Hotel's memorandum of points and authorities in support of its motion for summary judgment, the Court should deny the Union's motion for summary judgment, grant the Hotel's motion for summary judgment, and order all other relief it deems just and proper.

        Respectfully submitted,

        HAY ADAMS HOTEL, LLC


        By: _____/s/_____
         Jessica R. Hughes, Bar No. 478853
         Peter Chatilovicz, Bar No. 210278
         SEYFARTH SHAW LLP
         815 Connecticut Avenue, NW #500
         Washington, DC  20006-4004
         (202) 463-2400

Dated:  December 13, 2006    Attorneys for Plaintiff/Counterclaim Defendant Hay Adams Hotel, LLC

9

DC1 30177839.1