**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HAY ADAMS HOTEL, LLC, )<br>  )<br> Plaintiff/Counterclaim Defendant, )<br>  )<br> v. )<br>  )<br>HOTEL AND RESTAURANT )<br>EMPLOYEES, LOCAL 25, UNITE HERE )<br>INTERNATIONAL UNION, )<br>  )<br> Defendant/Counterclaim Plaintiff. )<br>  ) | Case No. 1:06-CV-00968 (EGS) |

**REPLY MEMORANDUM OF DEFENDANT/COUNTERCLAIM PLAINTIFF**
**IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

This case arises out of competing efforts by Plaintiff/Counterclaim Defendant Hay Adams Hotel, LLC ("Hay Adams" or "the Hotel") to vacate, and by Defendant/Counterclaim Plaintiff Hotel & Restaurant Employees, Local 25, UNITE HERE International Union ("Local 25" or "the Union") to enforce, an arbitration award issued by Arbitrator Nicholas Zumas ordering conditional reinstatement of a long-term Hotel employee, Girdharry Merhai. No genuine disputes of material fact exist, and the parties have filed opening briefs in support of cross-motions for summary judgment as well as opposing memoranda. This reply memorandum, which addresses the few issues raised by the Hotel's December 13, 2006 Memorandum in Opposition ("Hotel Opp."), completes submission of this matter to the Court.

**Introduction**

1.    Our opening brief set out in detail the special role of labor arbitration as "a vehicle by which meaning and content are given to the collective bargaining agreement," United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581 (1960) ("Warrior & Gulf"), and the judicial deference accorded the judgment of labor arbitrators—a standard that this Circuit has described as "the greatest deference imaginable." Utility Workers Union of Am., Local 246 v. NLRB, 39 F.3d 1210, 1216 (D.C. Cir 1994). See Union's November 22, 2006 Memorandum in Support of Cross-Motion for Summary Judgment and Opposition to Hotel's Motion for Summary Judgment ("Union Opening Br."), at pp. 6-11.

Instead of addressing the law, the Hotel's Opposition urges the Court to ignore it, based solely on its assertion that the Arbitrator here "exceeded the limits of the authority delegated to him" and thus is owed no deference. Hotel Opp. at p. 2. But this puts the cart well ahead of the horse: the Court's determination as to whether the Arbitrator exceeded his authority must, of necessity, be made pursuant to the extremely deferential standard of review adopted in the Steelworkers Trilogy and its progeny. Thus, the very legal principles dismissed by the Hotel as irrelevant "generalities," Hotel Opp. at p. 2, in fact govern the Court's examination of the award. Courts, particularly courts in this Circuit, have faithfully applied this framework, e.g., Madison Hotel v. Hotel & Rest. Employees, Local 25, 144 F.3d 855, 858-59 (D.C. Cir. 1998) (en banc) ("[O]nly the narrowest circumstances will justify setting the award aside."); see also Utility Workers Union, 39 F.3d at 1216 ("[A] federal district court presiding over a § 301 proceeding seeking enforcement of an arbitrator's award must give the award the greatest deference imaginable—the award must be enforced so long as the arbitrator purports to be interpreting the

contract . . . ."), and, during the past forty years, have consistently rejected claims by disappointed parties that arbitrators exceeded their authority.[1]

This backdrop exposes the Hotel's claim for what it is: an invitation to engage in an extraordinary exercise of judicial power. No such exercise is warranted here: as we explained in our opening brief, Union Opening Br. at pp. 14-16, Arbitrator Zumas employed common arbitral principles to construe the scope and application of the parties' agreements. The Hotel's dissatisfaction with his conclusions does not create the rare circumstance required to justify voiding his award.

---

[1] See, e.g., American Postal Workers Union v. USPS, 362 F. Supp. 2d 284 (D.D.C. 2005); Payne v. Giant Food, Inc., 346 F. Supp. 2d 15 (D.D.C. 2004); Pan American Airways Corp. v. Air Line Pilots Ass'n, Int'l, 206 F. Supp. 2d 12 (D.D.C. 2002); Apogee Coal Co. v. International Union, United Mine Workers of Am., 12 F. Supp. 2d 19 (D.D.C. 1998); McKesson Drug Co. v. International Bhd. of Teamsters, Local Union No. 730, 957 F. Supp. 1 (D.D.C. 1997); Washington Hosp. Ctr. v. Service Employees Int'l Union Local 722, 796 F. Supp. 574 (D.D.C. 1992); United Transp. Union v. Trailways, Inc., 663 F. Supp. 1092 (D.D.C. 1987); Safeway Stores, Inc. v. United Food & Commerical Workers Union, Local 400, 621 F. Supp. 1233 (D.D.C. 1985); Washington Hosp. Ctr. v. Service Employees Int'l Union Local 722, 577 F. Supp. 206 (D.D.C. 1983), rev'd, in part, on other grounds, 746 F.2d 1503 (D.C. Cir. 1984); Union Employee Div. of Printing Indus. of D.C., Inc. v. Columbia Typographical Union No. 101, 353 F. Supp. 1348 (D.D.C. 1973). We found only three published decisions in which a district court upheld a contested challenge to an award on grounds that the arbitrator exceeded his authority—and on all three occasions, the decisions were subsequently reversed on appeal. See Madison Hotel v. Hotel & Rest. Employees Local 25, 955 F. Supp. 1 (D.D.C. 1996), rev'd, 144 F.3d 855 (D.C. Cir. 1998) (en banc); USPS v. National Ass'n of Letter Carriers, 631 F. Supp. 599 (D.D.C. 1986), rev'd, 810 F.2d 1239 (D.C. Cir. 1987); Northwest Airlines, Inc. v. Airline Pilots Ass'n, Int'l, 633 F. Supp. 779 (D.D.C. 1985), rev'd, 808 F.2d 76 (D.C. Cir. 1987). Nor did we find any published opinion in which the D.C. Circuit vacated or reversed an arbitrator's award on the grounds that the arbitrator exceeded his authority, save for the panel decision in Madison Hotel that was reversed en banc, 128 F.3d 743 (D.C. 1997).

    A.    **The Arbitrator Acted Within His Authority in Interpreting the Parties' Agreements Using Common Arbitral Principles, and His Award Should Be Upheld.**

At issue in the arbitration hearing before Arbitrator Zumas were the scope and applicability of a 2003 settlement agreement entered into by the parties that returned Mr. Merhai to work at the Hotel. Although the Arbitrator noted that the 2003 agreement dealt with behavior of the type at issue in the case before him, he found, based on the undisputed record, that the parties had not contemplated the possibility of a psychological cause for Mr. Merhai's behavior. Exh. 3 (Award) at p. 14.[2] The Arbitrator also found that Mr. Merhai appeared to be a "troubled employee" who displayed symptoms possibly attributable to a psychological imbalance, id. at p. 13, and, in light of these findings, the Arbitrator crafted an award that carefully addressed the situation that the parties had not contemplated and attempted to balance the needs and obligations of all parties.

In its Opposition, the Hotel variously asserts that Arbitrator Zumas found an ambiguity in the language of the agreement where none existed (Hotel Opp. at p. 3), that he impliedly found that the agreement lacked a "meeting of the minds" as to Mr. Merhai's possibly unintentional conduct (id. at p. 4), that he imposed an extra element of proof on the Hotel (id.), and that he "ignore[ed]" the terms of the 2003 agreement, id. at p. 5. None of these assertions is accurate, as we show below.

    1.    The Hotel's arguments sum to nothing more than a declaration that the 2003 agreement was clear and unambiguous, and admitted of no interpretation by the Arbitrator. As an initial matter, we note that it is the <u>Arbitrator's</u> view of the language that the parties have

---

[2] All exhibit citations refer to those exhibits attached to the Declaration of Devki K. Virk, which was submitted to the Court on November 22, 2006 in support of the Union's Cross-Motion for Summary Judgment.

bargained for, and not the Hotel's or the Court's.  Thus, an arbitrator's determination whether an agreement is ambiguous is a judgment entitled to deference under the principles of the Steelworkers Trilogy.  See, e.g., NCR Corp., E & M-Witchita v. International Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 70, 906 F.2d 1499, 1501 (10th Cir. 1990) (deference owed to arbitrator's finding of ambiguity, as finding was part of contract interpretation).  As the Supreme Court has noted, "[a]rbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the[ir] variant needs and desires . . . ."  Warrior & Gulf, 363 U.S. at 581.  Accordingly, ambiguity in labor agreements is commonly found, and is, in fact, a principal reason for adoption of an arbitration process.

  Moreover, ambiguity need not be patent to require resolution by an arbitrator.  Often "an arbitrator may be able to discern a latent ambiguity in a contract based upon his examination of past practice or bargaining history even though no ambiguity appears on the face of the contract."  Loveless v. Eastern Air Lines, Inc., 681 F.2d 1272, 1278 n.14 (11th Cir. 1982) (holding arbitration panel acted within its authority to interpret "superficially clear and unambiguous terms" of a collective bargaining agreement to mean the opposite of what the terms stated based upon evidence regarding the parties' bargaining history).  See also In re Meriwether Lewis Elec. Coop., 119 LA 767, 775 (Holley 2004) ( "An arbitrator may find language to be ambiguous despite both parties' contentions that the language is clear and unambiguous.  Language may contain a latent ambiguity even when it appears to be clear on its face, but some extrinsic fact makes it susceptible to more than one interpretation.") (quoting Jay Grenig, "Contract Interpretation and Respect for Prior Proceedings," in Labor and Employment Arbitration pp. 9-3 to 9-6 (1997)); In re University of Cal., 122 LA 532, 537 (Bogue 2006)

("Language, that on its face, appears to be clear and unambiguous, may in fact include a latent ambiguity which is revealed by bargaining history."); In re U.S. Can Company, 2003 WL 23142052 (Oberdank 2003) (finding that parties' bargaining history revealed latent ambiguity in initial version of last chance agreement).[3]

Applying these conventional principles of contract interpretation, Arbitrator Zumas found the 2003 settlement agreement ambiguous as applied to the facts before him. As the leading text on labor arbitration explains, a "latent ambiguity may appear when there is an attempt to apply the language [of a contract] to a particular situation." Elkouri & Elkouri, How Arbitration Works 628 (6th ed. 2003). In this case, Arbitrator Zumas considered the undisputed fact that, at the time the 2003 agreement was negotiated, the parties had not contemplated the possibility that Mr. Merhai's behavior had a psychological cause. He therefore "filled in the gap," found that the agreement was not intended to reach potentially non-volitional conduct, and crafted a remedy to address that situation—a situation that the parties, admittedly, had not foreseen. There is nothing remarkable or at all unusual about Arbitrator Zumas's approach. See, e.g., Elkouri & Elkouri, supra, How Arbitration Works 442-44 (describing different approaches relied on by arbitrators filling in omitted terms in a parties' agreement); see also Union Opening Br. at pp. 15-19.[4]

---

[3] Due to the number of arbitration awards we cite in this Memorandum, we have not submitted copies of those awards as exhibits. All of the cited decisions are available in databases on Westlaw and Lexis. However, if the Court would find such a submission helpful, we can easily deliver or file copies of the cited awards upon request.

[4] The Hotel appears to argue that the Arbitrator's determination that there was a "missing term"—i.e., that the parties did not consider the possibility that Mr. Merhai's behavior could be prompted by a psychological condition—precludes the existence of a valid agreement, as there was no "meeting of the minds." Hotel Opp. at p. 4. That argument misunderstands both the Arbitrator's role as well as his findings. See supra at p. 5; Union Opening Br. at pp. 15-16; In re Meriwether, 119 LA 767, 774 ("Arbitrators . . . often confront circumstances not contemplated by the parties at the time of contract formation. Arbitrators customarily rely on three sources of

Arbitrator Zumas's award thus lay well within the bounds of his role as the parties' appointed "contract reader." American Postal Workers v. USPS, 789 F.2d 1, 6 (D.C. Cir. 1986) (Edwards, J.) ("[T]he adoption of an arbitration clause indicates that the parties have agreed to employ an arbitrator as their 'contract reader' and empowered him or her to render a binding interpretation of the collective bargaining agreement."). Far from "ignoring" the terms of the 2003 agreement, Hotel Opp. at pp. 5-6, he specifically considered and interpreted them. See Madison Hotel, 144 F.3d at 859 (arbitration awards should generally be upheld unless the arbitrator "render[ed] a judgment . . . wholly without regard to the terms of the parties' contract" or "simply ignore[d] the contract.") (internal citations omitted). While the Hotel may disagree with his interpretations, such disagreement provides no basis for the Court to take the extraordinary step of vacating the award. See Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000) ("[T]he fact that a court is convinced [an arbitrator] committed serious error does not suffice to overturn his decision.") (internal quotation omitted).

2. The Hotel's attempt to attack Arbitrator Zumas's view of the scope of the dispute submitted to him fails for the same reasons. While acknowledging that it "is true generally" that arbitrators "have a great deal of leeway in their construction of the scope of dispute[s]," Hotel Opp. at p. 5, the Hotel once again urges the Court to disregard this general tenet on grounds that the 2003 agreement "limited" Arbitrator Zumas's inquiry, id.

---

principles as guides to determine contractual intent. They are (1) standards of contract interpretation, (2) the concept of past practice, and (3) the principle of reasonableness. Such interpretive guidelines are frequently used in conjunction with each other.") (quoting Carlton Snow, "Contract Interpretation," The Common Law of the Workplace pp. 64-65 (St. Antoine, ed. 1998)).

As we pointed out in our opening brief, however, "[t]he scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator," and his view of the issues before him "receives the same judicial deference as an arbitrator's interpretation of a collective bargaining agreement." Madison Hotel, 144 F.3d at 857; Union Opening Br. at p. 12. Of course, parties to a labor agreement may explicitly limit an arbitrator's jurisdiction and authority to make factual and interpretive conclusions, see, e.g., In re Minnegasco Inc., 110 LA 1077, 1078 (Jacobowski 1998) (finding that LCA limited arbitrator's authority where the agreement explicitly provided that the "only issue which may be presented to and considered under the grievance procedure is whether or not [the grievant], in fact, violated the condition as charged."); In re Mac Plastics, Inc., 1993 WL 797876 (Felice 1993) (same). But such was not the case here. Neither the 2003 agreement nor the CBA expressly limits the Arbitrator's authority in such a fashion. Compare In re Poe Asphalt, 2001 WL 1401793, at p. 9 (Gangle 2001) (noting that "[m]any arbitrators have held . . . that absent specific language in a CBA expressly prohibiting evidence of agreements adding to, subtracting from, modifying or otherwise conflicting with the CBA itself, extrinsic evidence may be considered, in order to determine the intent of the parties."); In re H.J. Heinz Co., 122 LA 845, 846, 849 (Fullmer 2006) (cited by Hotel, Opp. at pp. 4-5) (declining to apply "proper cause" standard to termination grievance, where settlement agreement negotiated by the parties explicitly stated that arbitration was confined to question of whether termination was "arbitrary and capricious").

Not only did the parties not bargain for such constraints, their own submissions of the issue to the Arbitrator likewise contain no clear bound on his authority. See Union Opening Br. at p. 12. Certainly Arbitrator Zumas cannot be held to have exceeded a jurisdictional limitation that the parties themselves did not impose. See In re City of Stillwater, 103 LA 684, 688 (Neas

1994) (applying just cause standard to violation of an LCA, and rejecting argument that termination was "automatic" under the terms of an LCA, where the LCA stated only that a violation "subjects" the employee to termination.).

3.      As noted, Arbitrator Zumas premised his award in part upon his finding that Mr. Merhai was a "troubled employee" who displayed "symptoms of an underlying psychological imbalance." Exh. 3 (Award), at p. 13.  The Hotel complains that Arbitrator Zumas "took it upon himself" to make an "arm-chair diagnosis" of Mr. Merhai, and argues that this finding is "not entitled to any deference." Hotel Opp. at p. 6.  The notion that Arbitrator Zumas's factual findings are not entitled to deference is plainly incorrect—indeed, the opposite is true.  "To resolve disputes about the application of a collective bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 39 (1987) (finding appellate court erred in questioning arbitrator's finding that there was insufficient evidence of drug use by employee on company property, despite evidence in record showing that employee was present in a car on company property that was full of marijuana smoke, and also possessed marijuana in his own car).

Moreover, the Hotel's characterization of Arbitrator Zumas's findings is misleading.  His award makes clear that he did not "diagnose" Mr. Merhai as having a psychological condition.  Rather, he observed, on the basis of Mr. Merhai's testimony and demeanor at the hearing, that Mr. Merhai displayed symptoms possibly attributable to a psychological disorder.[5]  Exh. 3 (Award) at p. 13.  Recognizing that he did not have the professional capacity to make such a

---

[5] Contrary to the Hotel's assertions (see Hotel Opp. at p. 7), Arbitrator Zumas did not find Mr. Merhai "troubled" based on the conduct at issue, but on Mr. Merhai's testimony and demeanor at the hearing.  Exh. 3 (Award) at pp. 13-14.

diagnosis, Arbitrator Zumas specifically designed an award that accounted for the <u>possibility</u> that Mr. Merhai suffered from a psychological disorder. Exh. 3 (Award) at p. 14. In this regard, Arbitrator Zumas acted exactly as the arbitrator did in <u>LTV Steel Mining Co.</u>, 110 LA 283 (Das 1997), whose award conditionally reinstated an employee who was terminated for violating his second last chance agreement based on the <u>possibility</u> that the employee's misconduct was a result of the employee being prescribed the wrong medication for his psychological disorder. <u>Id.</u> at 288. As here, the arbitrator in <u>LTV Mining Co.</u> received no expert testimony on this point. <u>Id.</u> Similarly, in <u>Cross Oil Refining Co.</u>, 111 LA 1013 (Bumpass 1999), an employee on a last chance agreement for engaging in multiple confrontations with co-workers and customers was conditionally reinstated in light of the <u>possibility</u>, in the absence of expert testimony, that the employee's short temper was caused by diabetes. <u>Id.</u> at 1024.

Arbitrator Zumas acted well within his authority to find that Mr. Merhai was a troubled employee, and fashioned an award accordingly.[6] No legal basis exists to upset this factual determination.

### B. Enforcement of the Award Would Not Contravene Public Policy

As we noted in our Opening Brief, the Hotel had abandoned the claim, included in its Complaint, that the award was unenforceable on public policy grounds. <u>See</u> Union Opening Br.

---

[6] As we explained in our Opening Brief, "troubled employee" is a term of art used in labor arbitration, Union Opening Br. at pp. 16-18, and it is well-established that an arbitrator can find that an employee is a "troubled employee" in the absence of expert testimony. <u>See</u>, <u>e.g.</u>, <u>In re USS</u>, 1998 WL 1041417, at p. 4 (St. Antoine 1998) (finding employee "troubled" based upon employee's testimony regarding his use of alcohol); <u>In re S. Cal. Rapid Transit Dist.</u>, 96 LA 1113, 1114 (Gentile 1991) (finding grievant was "troubled employee" based upon the evidence regarding grievant's anger management problems and his seeking of professional help after termination); <u>In re Rykoff</u>, 90 LA 233, 234 (Angelo 1987) (conditionally reinstating employee, despite finding that employer had cause for termination, upon finding that employee's "domestic situation" was having an "effect on his employment relationship").

at p. 11 n.5.  The Hotel's belated attempts to resurrect this theory in its Opposition are patently insufficient.

To avail itself of the "public policy" exception to the general rule of judicial deference to arbitration awards, a party must establish that enforcement of the award <u>itself</u> – not the underlying misconduct alleged against the employee – contravenes an "explicit, well-defined, and dominant public policy," the articulation of which must be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." <u>Eastern Associated Coal Corp.</u>, 531 U.S. at 63 (finding award reinstating truck driving employee who twice tested positive for marijuana did not violate any public policy); <u>see also</u> <u>Northwest Airlines, Inc. v. Airline Pilots Ass'n., Int'l</u>, 808 F.2d 76, 83 (D.C. Cir. 1987) (Edwards, J.) (noting that invalidation of an arbitration award is circumscribed to those few situations in which "the award itself violates established law or seeks to compel some unlawful action.").

The Hotel's Opposition contains no reference whatsoever to any "laws and legal precedents" establishing any putative public policy that would be contravened by Mr. Merhai's reinstatement.  Instead, the Hotel rests solely on hyperbolic characterizations of Mr. Merhai's alleged conduct and vague assertions regarding what "public policy favors."  Hotel Opp. at pp. 7-8.  These thin contentions do not remotely satisfy the basic elements of its claim.  In any event, it is plain that no public policy would be violated by enforcement of Arbitrator Zumas's award, which ordered Mr. Merhai reinstatement only after a psychiatric professional determined that he was fit for duty.

## Conclusion

As the Supreme Court has held, "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements."

United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960); see also Richmond, Fredericksburg & Potomac R.R. v. Transportation Communications Int'l Union, 973 F.2d 276, 278 (4th Cir. 1992) ("Every presumption is in favor of the validity of the award.") (quoting Burchell v. Marsh, 58 U.S. (17 How.) 344, 351 (1855)).  The Hotel has failed to demonstrate any basis for the Court to take the rare and extreme step of voiding the award at issue here.  Accordingly, for all of the foregoing reasons, as well as those stated in our Opening Brief, Arbitrator Zumas's award should be enforced and summary judgment should be entered for the Union on all claims.

                        Respectfully submitted,

                        /s/ Devki K. Virk_____
                        Devki K. Virk (D.C. Bar No. 459418)
                        BREDHOFF & KAISER, P.L.L.C.
                        805 Fifteenth Street, N.W., Suite 1000
                        Washington, D.C.  20005
                        (202) 842-2600 (Telephone)
                        (202) 842-1888 (Facsimile)

                        *Counsel for Defendant/Counter-Plaintiff Hotel & Restaurant Employees, Local 25, UNITE HERE International Union*

Dated:  December 22, 2006

## **PROOF OF SERVICE**

   I hereby certify that the foregoing document, Reply Memorandum in Support of Defendant/Counterclaim Plaintiff's Cross-Motion for Summary Judgment, was filed on December 22, 2006 using the Court's CM/ECF system, under which all counsel are automatically notified as follows:

Peter Chatilovicz
Jessica R. Hughes
SEYFARTH SHAW LLP
815 Connecticut Avenue, N.W. – Suite 500
Washington, D.C.  20006-4004
(202) 463-2400 (Telephone)
(202) 828-5393 (Facsimile)
pchatilovicz@seyfarth.com
jhughes@seyfarth.com

              /s/ Devki K. Virk_____
              Devki K. Virk