**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| HAY ADAMS HOTEL LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HOTEL & RESTAURANT EMPLOYEES, ) <br> LOCAL 25, UNITE HERE ) <br> INTERNATIONAL UNION, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 06-968 (EGS) |

**MEMORANDUM OPINION**

Plaintiff Hay Adams Hotel ("the Hotel") has filed a complaint under Section 301 of the Labor Management Relations Act to vacate an arbitration award rendered by Arbitrator Nicholas Zumas pursuant to a last chance agreement ("LCA") between the Hotel and Local 25 of the Hotel and Restaurant Employees' UNITE HERE International Union ("the Union"). Pending before the Court are the parties' cross motions for summary judgment. Upon consideration of the motions, responses and replies thereto, applicable law, and the entire record, the Court **grants** the Hotel's motion for summary judgment and **denies** the Union's motion for summary judgment.

I.  BACKGROUND

The Hay Adam Hotel is a luxury hotel located in the District of Columbia, and is a member of the Hotel Association of Washington, DC ("the Association"). Compl. ¶ 2. The Association

negotiated the current collective bargaining agreement ("CBA") between the Hotel and the Union.  *Id*. at ¶ 7.  The parties' CBA contains a detailed grievance procedure, in which arbitration is put forth as the final means of resolving any "grievance or misunderstanding" arising from the CBA.  *See* CBA, Art. XVII: Grievance and Arbitration Procedure, Ex. 1 to Virk Decl.

Girdharry Merhai worked as a bellman at the Hotel and was covered by the CBA.  In 2003, Merhai was terminated from the Hotel after he violated several rules related to proper conduct in the workplace.[1]  The Union, however, intervened on Merhai's behalf and negotiated a LCA with the Hotel.  The LCA provided for Merhai's reinstatement on the condition that he refrain from behavior "similar in nature to that which gave rise to the instant grievance."  Settlement Agreement ¶ 3, Ex. 4 to Virk Decl.  The agreement stipulates that in the event that Merhai engaged in similar conduct, the Union waived its right to grieve the termination.[2]  *Id*.  The LCA was signed by the Hotel, the

---

[1] Merhai alleged that the Hotel's General Manager had stolen money from employees and should be fired.

[2] The pertinent provision of the LCA provides that "[s]hould the Grievant engage in behavior in the future that is similar in nature to that which gave rise to the instant grievance – including violating the Hotel's 'The Work Place Environment is No Place for the Rumor Mill' Policy, its Performance Improvement policy and its Harassment policy – and as a result be terminated from employment, the Union agrees that it shall waive its right to grieve such future incident.  This Agreement shall not, however, preclude the Union from carrying out its due diligence

Union, and Merhai himself. *Id*. at 2. Merhai subsequently returned to work in his previous position at the Hotel.

In July 2005, Merhai violated additional rules related to appropriate conduct in the workplace. He called members of Hotel management "racists" within earshot of Hotel customers and accused the Hotel's controller of harassing him about his worker's compensation absences. Following these incidents, the Hotel terminated Merhai pursuant to the LCA.

The Union then filed a grievance, which was opposed by the Hotel. The Hotel argued that because the behavior which led to Merhai's termination was "similar" to that of the 2003 behavior that led to the LCA, the Union was estopped from grieving his termination. *See* Settlement Agreement ¶ 3. The Union countered that Merhai's behavior did not constitute a breach of the LCA, and, therefore, his discharge was not justified. Because the parties were unable to resolve their grievance, the matter was submitted to arbitration.

In December 2005, Arbitrator Nicholas Zumas conducted a two-day arbitration hearing regarding Merhai's termination. Both the Hotel and the Union presented witnesses and submitted exhibits. When Merhai was questioned about his actions he testified that he called members of Hotel management "racists" because they made

---

in investigating the factual claim of wrong doing." Settlement Agreement ¶ 3.

him "feel inferior" and "like a piece of sand." Arbitration Hr'g Tr. Vol. 1, at 233-34 (Dec. 15-16, 2005), Ex. 2 to Virk Decl. He explained that while no member of Hotel management had ever expressly mentioned his race, he felt as though they "conspired against [him]" because of the "color of [his] skin." *Id.*, Vol. 2, at 24-27. Finding Merhai's testimony "bizarre," the arbitrator asked the parties if there was a psychological explanation for Merhai's outburst. *Id.*, Vol. 2, at 76. Neither party was aware of any underlying psychiatric disorder. After the hearing, the arbitrator had the parties submit post-hearing briefs. *See generally* Union Post-Hearing Brief, Ex. 5 to Virk Decl.; Hotel Post-Hearing Brief, Ex. 6 to Virk Decl.

On April 13, 2006, the arbitrator issued his opinion and award. *See generally UNITE HERE, Local 25 v. Hay-Adams Hotel* (Apr. 13, 2006) (Zumas, Arb.) ("Arbitration Award"), Ex. 3 to Virk Decl. The arbitrator framed the issue before him as "whether Grievant violated the conditions of his Last Chance Agreement; and if so, whether the penalty of termination was appropriate." *Id.* at 3. The arbitrator answered the first question in the affirmative. He acknowledged that "[t]he Company presented credible evidence that Grievant in fact committed a number of violations of Company work rules" in violation of the LCA. *See id.* at 13 (discussing these factual findings). The arbitrator then noted that during the hearings "it became

4

apparent to this Arbitrator that Grievant is a troubled employee, who clearly displays symptoms of underlying psychological imbalance." *Id*. Finding that an underlying psychological imbalance was not contemplated by the parties when they negotiated the LCA, the arbitrator determined that it was "more appropriate" to "provide for a careful inquiry by a qualified professional into possible psychological problems which might have caused a long-term employee to begin engaging in this kind of misconduct," rather than "simply terminate this employee under the terms of the LCA, without further investigation." *Id*. at 14.[3] Ultimately, then, despite his determination that Merhai "violat[ed] the conditions for his reinstatement under the 2003 LCA," the arbitrator ordered that the Hotel conditionally reinstate Merhai. *Id*. at 13.

On May 24, 2006, the Hotel filed a complaint, seeking to vacate the arbitration award. The Hotel alleged that the award was unenforceable because it failed to draw its essence from the LCA and was in violation of public policy. The Union then filed

---

[3] The Award states that "[g]rievant is to undergo a professional psychological evaluation and a nine-month period of counseling, including a course in anger management, all to be undertaken during Grievant's off-duty hours and all expenses to be borne by the Union. He is to be reinstated, with seniority unimpaired but without back pay, upon certification of his fitness to return to duty. . . . In the event Grievant commits similar work rules violations during this period, or fails to successfully complete psychological counseling, or fails the anger management course, he will be automatically terminated." Arbitration Award at 15.

5

a counterclaim for enforcement of the arbitration award.  On October 16, 2006, the Hotel filed a motion for summary judgement claiming that the arbitrator exceeded his statutory and contractual authority in rendering his award.  On November 22, 2006, the Union filed a cross motion for summary judgment on the ground that the arbitrator's award was proper.  Both parties agree that there is no dispute of fact and this matter may be resolved on summary judgment.

## II.  ANALYSIS

Labor arbitration awards are generally afforded great deference.  *See Madison Hotel v. Hotel & Restaurant Emples., Local 25*, 144 F.3d 855, 855-59 (D.C. Cir. 1998) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)).  There are, however, limitations on arbitration awards.  For instance, in rendering an award "[t]he arbitrator may not ignore the plain language of the contract."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *see also Madison Hotel*, 144 F.3d at 858 (noting that an arbitration award which "fails to draw its essence from the collective bargaining agreement cannot stand").  "Nor can an arbitrator simply ignore the contract and 'dispense his own brand of industrial justice.'"  *Madison Hotel*, 144 F.3d at 859 (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960)).  An arbitrator, therefore, is confined to the "interpretation and

application" of the parties' agreement.  *Enterprise Wheel,* 363 U.S. at 597.  The issue in this case, then, is whether the arbitrator "grossly deviate[d] from his conferred authority or from the issues submitted for arbitration" in rendering his award.[4]  *Office & Prof. Emp. Int'l Union, Local 2 v. Washington Metro. Transit Auth.*, 724 F.2d 133, 140 (D.C. Cir. 1983).

The Hotel persuasively argues that the award should be vacated, as the arbitrator failed to abide by the clear and unambiguous language of the LCA.  The Hotel explains that once the arbitrator determined that Merhai "violated the conditions of his LCA," *id*. at 13, the arbitrator lacked authority to engage in further inquiry, as the Union agreed in the LCA not to grieve such a termination.  *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

---

[4] An arbitration award may also be set aside if it violates public policy.  *See generally Northwest Airlines, Inc. v. Air Line Pilots Assoc., Int'l,* 808 F.2d 76, 78 (D.C. Cir. 1987) (describing the narrow public policy exception).  While the Hotel alleged in its initial complaint that the arbitration award violated public policy, it did not move for summary judgment on that ground.  As a result, in its cross motion for summary judgment, the Union argued that the Hotel had abandoned this theory.  Even if this Court considered the Hotel's public policy argument on the merits, however, it would not succeed as the Hotel failed to identify an "explicit, well defined, and dominant public policy" as "ascertained by reference to positive law," which the award violates.  *Eastern Assoc. Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 63 (2000).

The Union counters that because the parties did not stipulate the issues submitted to arbitration, the arbitrator was free to determine the issues before him.[5]  *See Madison Hotel*, 144 F.3d at 857 ("An arbitrator's view of the issues submitted to him for arbitration therefore receives the same judicial deference as an arbitrator's interpretation of a collective agreement."). Arguing that the arbitrator's framing of the issues was "rationally derived" from the parties' submission, the Union submits that the arbitrator's decision to engage in a "just cause" analysis was permissible, and therefore, his award should be enforced.  *Richmond, Fredricksburg & Potomac R.R. v. Transp. Comm. Int'l Union*, 973 F.2d 276, 280 (4th Cir. 1992).

While the D.C. Circuit has yet to consider a challenge to an arbitration award in the context of a LCA, the facts in this case are similar to cases decided by the Seventh and Eighth Circuit. *See Coca-Cola Bottling Co. v. Teamsters Local Union No. 688*, 959 F.2d 1438 (8th Cir. 1992); *Tootsie Roll Indus., Inc. v. Local Union No. 1*, 832 F.2d 81 (7th Cir. 1987).  In *Coca-Cola Bottling*, the union and employer brokered a LCA, which reinstated an employee on the condition that he not commit any "offense of a

---

[5] In his opinion, the arbitrator notes that "[t]he parties did not agree on a formulation of the issues to be decided. Accordingly, I have determined that the issue to be decided can be stated as follows:  whether Grievant violated the conditions of his Last Chance Agreement; and if so, whether the penalty of termination was appropriate?"  Arbitration Award at 3.

similar and/or like nature in violation[] of Category A Rules and Regulations." 959 F.2d at 1439. After the employee violated several category A rules, he was terminated pursuant to the LCA. *Id*. The Union then filed a grievance and the matter was submitted to arbitration. *Id*. The arbitrator found that while the employee had committed the rules violation, the discharge was unwarranted. *Id*. at 1441. The district court vacated the award, however, and the Eighth Circuit affirmed. *Id*. at 1442. The Court held that "the arbitrator went outside the last chance agreement by rejecting the bargained-for remedy, notwithstanding his determination that a category A rules violation, a triggering event had occurred." *Id*. at 1441. The Court emphasized that the arbitrator's determination of whether the "triggering event" had occurred deserved deferential review, *id*. at 1441, but that once the arbitrator determined that the triggering event had occurred, he was obliged to follow the language of the LCA. *See id*. at 1442 ("The arbitrator's disregard of the language of the last chance agreement concerning the consequences to [the employee] of a finding that he committed a category A rules violation requires the reversal of his award.").

The result was similar in *Tootsie Roll Indus., Inc. v. Local Union No. 1*, 832 F.2d 81 (7th Cir. 1987). In *Tootise Roll*, the union and employer agreed to a LCA. *Id*. at 82. The LCA stated that if the employee failed to meet a specified attendance level,

9

"she will be terminated and the Union waives any right to file or pursue a grievance or other claim on her behalf." *Id*. After the employee missed work as a result of car problems and illness, she was terminated. *Id*. An arbitrator ordered the employee reinstated finding that her absences were the result of "extenuating circumstances." *Id*. at 83. The district court vacated the award, and the Seventh Circuit affirmed. *Id*. at 84. The Court explained that once the arbitrator determined that the employee violated the attendance requirements of the LCA, "the waiver clause of the agreement renders [the Union]'s grievance not arbitrable." *Id*. The Court emphasized that even though the terms of the LCA might be "very harsh" or "unreasonable," "the parties agreed to it and the contract is exactly what it purports to be – a 'last chance' agreement." *Id*.

The arbitrator in this case, like those in *Coca-Cola* and *Tootsie Roll*, exceeded his authority. While an arbitrator's view of the issues submitted to him receives great deference, *see Madison Hotel*, 144 F.3d at 857, an arbitrator may not consider an issue which the parties agreed would not be arbitrated. *See United States Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523, 530 (4th Cir. 2000) ("If the parties unambiguously agree that a certain class of disputes is not subject to the grievance procedure, then no arbitrator or court may reach the opposite conclusion."); *see also Madison Hotel*, 144 F.3d at 858 n.1 ("This

question – the scope of the submission to the arbitrator – should not be confused with the question of arbitrability – whether the employer and the union agreed . . . to put a particular issue to arbitration."). The LCA in this case clearly and unambiguously states that if Merhai's conduct is found to be "similar" to that which led to his initial termination, "the Union agrees to waive its right to grieve such future incident." Settlement Agreement ¶ 3. Therefore, once the arbitrator found that the triggering event occurred – that Merhai had violated the terms of the LCA – the arbitrator's inquiry had to end. The Union's grievance was no longer arbitrable.

Arbitrator Zumas, however, did not end the inquiry. After he acknowledged that the "[g]rievant violated the conditions of his LCA," he went on to conclude that the "penalty of termination was inappropriate." Arbitration Award at 13. While he attempted to justify his venture outside the LCA on the grounds that "[t]he possibility of an underlying psychological problem as a cause of Grievant's suddenly bizarre behavior was not contemplated by the parties when the 2003 LCA was negotiated," *id*. at 14, his "just cause" analysis was unauthorized.[6] The LCA modified the just

---

[6] If the arbitrator had determined that Merhai's conduct was *not* "similar in nature," then Merhai's termination would have been governed by the CBA (not the LCA). In that instance, the arbitrator would have had full authority (under the CBA) to determine whether there was "just cause" for Merhai's termination and the Court would have given that determination the utmost deference. In this case, however, once the arbitrator found that

11

cause provision of the CBA and permitted the Hotel to terminate Merhai if he engaged in behavior "similar in nature" to that which gave rise to the 2003 grievance – regardless of whether the termination was for cause. *See Boise Cascade Corp. v. Paper, Allied-Industrial, Chem. & Energy Workers, Local 7-0159*, 309 F.3d 1075, 1085 (8th Cir. 2002) ("Just cause under the terms of the collective bargaining agreement was irrelevant to [the grievant's] discharge pursuant to the last chance agreement and should not have been considered. The last chance agreement superceded the collective bargaining agreement." (quoting *Coca-Cola Bottling Co.*, 959 F.2d at 1440)*; see also Cont'l Airlines, Inc., v. Int'l Bhd. of Teamsters*, 391 F.3d 613 (5th Cir. 2004) ("[W]hen parties enter into a LCA, 'the LCA must be thought of as a supplement to the CBA' which constitutes 'the parties' chosen means of dispute resolution,' and which is binding on the arbitrator." (quoting *Cooper Nat. Res., Inc. v. Int'l Union of Operating Eng'rs, Local 351*, 163 F.3d 916, 919 (5th Cir. 1999))); *Ohio Edison Co. v. Util. Workers Union of Am., Local 457*, 947 F.2d 786, 787 (6th Cir. 1991) ("[L]ast chance agreements are binding in arbitration."). The arbitrator, therefore, had no

---

Merhai engaged in "similar" behavior, the LCA controlled, and the Hotel was permitted to terminate Merhai without grievance from the Union. *See Anheuser-Busch, Inc., v. Int'l Bd. of Teamsters Local 744*, 280 F.3d 1133, 1137 (7th Cir. 2002) ("The question is not whether the arbitrator misinterpreted the agreement, but only whether the arbitrator's inquiry disregarded the very language of the agreement itself.").

authority to determine whether Merhai's termination was inappropriate or to order his reinstatement.[7] While this outcome may seem unfair or "harsh," it was bargained for by the parties, and ratified by the Hotel, the Union, and Merhai himself. *See Tootsie Roll*, 832 F.2d at 84 (7th Cir. 1987) ("[T]he language of the agreement is clear and unambiguous, and since the parties agreed to it, they are bound by it."); *see also Ohio Edison*, 947 F.2d at 787 (explaining that an arbitrator did not have the authority to set aside a LCA on the ground that the discharge was "unreasonably harsh").

### III. CONCLUSION

More than forty-five years ago the United States Supreme Court set forth the standard for vacating an arbitration award. *Enterprise Wheel,* 363 U.S. at 597. "[A]n arbitrator is confined

---

[7] The Eight Circuit's decision in *Boise Cascade* is instructive on this point. *See* 309 F.3d at 1077. In *Boise Cascade*, the employer and union brokered a LCA, which imposed strict attendance requirements on the employee. *Id*. at 1078. After the employee was terminated for failing to report to work, the arbitrator ordered the employee's reinstatement. In affirming the district court's decision to vacate the arbitral award, the Eighth Circuit explained that "[a]lthough the arbitrator stated that the sole issue before him was whether [the employee] violated the LCA, he effectively undertook a 'just cause' analysis, finding that [the employee's] absence was not 'frivolous' because her absence was caused by a desire to enter into an in-patient counseling program." *Id*. at 1085. Emphasizing that a LCA renders a just cause provision in the parties' CBA irrelevant, the Court reversed the award on the grounds that the arbitrator chose "to balance the equities of the situation, rather than to interpret and apply the agreement." *Id*. at 1086.

to interpretation and application" of the parties' agreement, and "[w]hen the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."  *Id.; see also Int'l Union of Operating Eng'rs,* 163 F.3d at 919 ("[A]n arbitrator ignoring the explicit terms of a last chance agreement is owed no deference.").  Because the arbitrator in this case ignored the explicit terms of the parties' last chance agreement, the Court **grants** the Hotel's motion for summary judgment and **denies** the Union's motion for summary judgment.  Accordingly, the arbitrator's award is hereby vacated.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:**    **Emmet G. Sullivan**
         **United States District Judge**
         **May 9, 2007**